### McCRAY v. MILLER et al.
### BLAND v. BLAND et al.

No. 10291—Opinion Filed October 14. 1919.

On Rehearing, Jan. 20, 1920.

(Syllabus by the Court.)

**1. Oil and Gas—Lease—Effect of Surrender Clause.**

The presence of a surrender clause in an oil and gas lease does not give the lessor the right to terminate the lease, where the lessee has not breached its terms.

**2. Homestead—Definition.**

The word "homestead" has both a popular and a legal signification and its popular and legal meaning is the same. In common acceptation of the term it means the residence of the family—the place where the home is, and it was employed in the common and popular apprehension of its meaning in that part of section 1, art. 12, of our Constitution, pertaining to rural homesteads.

**3. Homestead—Residence.**

Where the head of a family in this state is the owner of but one tract of land, not within any city. town, or village, consisting of not to exceed one hundred sixty acres. the fact of ownership alone does not constitute it a homestead. There can be no homestead right in land where the owner does not and never

has resided thereon, and has made no preparation or evinced any intention of so doing.

**4. Corporations—Oil Lease—Corporation as Lessee.**

There is no inhibition in section 2, art. 22 of the Constitution, against a corporation acquiring a lease to prospect land for oil and gas.

### On Rehearing.

**5. Constitutional Law—Due Process of Law—Impairment of Obligation of Contracts—Oil and Gas Leases—Change in Judicial Decisions—Effect.**

Defendants in error obtained an oil and gas lease on a tract of land prior to the rendition of the opinion of Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, which case was thereafter overruled by an opinion of this court in the case of Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86. Held, the overruling of the case of Brown v. Wilson did not deprive the defendants in error of any of their property rights without due process of law, nor did the same impair any of their rights under and by virtue of their oil and gas lease in violation of section 1, art. 14, and sec. 10, art. 1, of the Constitution of the United States.

**6. Courts—Stare Decisis—Decisions on Oil and Gas Leases.**

Under the facts and pleadings in this case, the rule of stare decisis has no application.

**7. Constitutional Law—Impairment of Obligation of Contracts—Change in Judicial Decisions.**

It is well settled that an impairment of the obligation of a contract, within the meaning of the federal Constitution, must be by subsequent legislation, and no mere change in judicial decisions will amount to such deprivation.

Error from District Court, Creek County; Mark L. Bozarth, Judge.

Action by W. S. McCray against Ambrose Miller and others. From the judgment McCray and Owen W. Bland bring error. Reversed and remanded, with directions.

J. O. O'Meara, Chas. E. Bush, A. F. Moss and Stuart, Cruce & Riddle, for plaintiffs in error.

W. H. Kornegay, Owen Owen, W. V. Biddison and V. H. Biddison, for defendants in error.

West, Sherman, Davidson & Moore and Hill, Ramsey & Hagan, amicus curiae.

RAINEY, J. This is an equitable action for the cancellation of an oil and gas lease. At the request of all parties the trial court made separate findings of fact and conclusions of law, which are as follows:

"Findings of Fact by the Court.

"In this case the court finds the facts to be:

"1. That the land involved in this suit and covered by the oil and gas lease in controversy, is as described in the pleadings and consists of 160 acres of the allotment of one Owen W. Bland, who was a member of the Creek tribe of Indians by blood.

"2. The court finds that the said Owen W. Bland and the defendant Fern Bland were married on the 15th day of July, 1915, and that they separated on or about the first day of November, 1915, and never resided together as husband and wife thereafter.

"3. That on the 24th day of November, 1915, the said Fern Bland filed suit for divorce and alimony, and that in said petition she alleged that said separation took place on the 1st day of November, 1915.

"4. The court further finds that the said Owen W. Bland as the owner of said land, never at any time during said marriage relation, or at any other time, designated or selected said land or any portion thereof as a homestead for himself and family, and never at any time had any intention of making said land the homestead of himself and family, nor did he have any intention at any time to improve the same for a homestead or live and reside thereon as such.

"5. The court finds that on the 18th of November, 1915, the said Owen W. Bland executed and delivered an oil and gas lease covering the land involved, the same being the 160 acres allotment of Owen W. Bland, to one John H. Simmons, for a valuable consideration; that on the 16th day of November, 1916, said lease was, for a valuable consideration, assigned by the said John H. Simmons, the owner thereof, to the Ross Investment Company, an Oklahoma corporation organized for the purpose of producing oil and gas for commercial purposes; that said oil and gas lease was sold and transferred by the Ross Investment Company to W. S. McCray.

"6. The court finds further that on January 11, 1916, and at all times thereafter the plaintiff had constructive knowledge of the execution of a lease by the said Helen Fern Bland to Ambrose Miller covering the lands involved herein and of the intention of the said Helen Fern Bland to hold the plaintiff lessees to the performance of the covenants of development in the Simmons lease.

"7. The court finds that on November 16, 1916, and after said Owen W. Bland had conveyed to Fern Bland the eighty acres in controversy, W. S. McCray paid to said Fern Bland eighty dollars, the amount provided for in the lease covering the eighty acres described in the deed of conveyance, and the same was accepted by the said Fern Bland; that some time prior to November 15, 1917, the plaintiff made personal tender of eighty

dollars due Fern Bland as rental on the eighty acres herein, which was refused by her; that on the 15th day of November, 1917, plaintiff, W. S. McCray, deposited in the First National Bank of Tulsa, Oklahoma, in pursuance to the provisions of said oil and gas lease, the sum of eighty dollars,. to the credit of the said Fern Bland.

"8. The court finds that on or about the 1st of September, 1917, the plaintiff W. S. McCray started drilling operations for the purpose of drilling a well for oil and gas, upon the land in controversy; that the average time for drilling and completing a well in said vicinity was thirty days; that plaintiff encountered unforeseen trouble and that said well was not completed prior to the 18th day of November, 1917; that there was no oil being produced in paying quantities from said land on the 18th day of November, 1917, nor until some time thereafter; that said drilling operations and development were started and continued in good faith and due diligence by the plaintiff, W. S. McCray. and continued until oil was found in paying quantities.

"9. The court finds that at the time Owen W. Bland and Fern Bland were divorced that they freely and voluntarily entered into an alimony and property settlement and settlement of their property and marital rights; that by reason of such settlement Fern Bland received the eighty acres in controversy by a conveyance from Owen W. Bland, and that she released all interest in his property, both real and personal, and assumed the payment of one-half of a mortgage for thirty-five hundred dollars against the entire allotment, and that said Owen W. Bland in effecting said settlement and executing and delivering said deed of conveyance, acted freely and voluntarily and free from any duress. undue influence, menace and compulsion.

"Conclusions of Law.

"1. The court concludes as a matter of law that from the facts found, the land in controversy and no part thereof was impressed with the homestead character and does not constitute the homestead of Owen W. Bland and Fern W. Bland, his wife.

"2. That the consideration for the Simmons lease was the covenants on the part of the lessee for the development of the property and the payment of prospective royalties, and that by reason of the surrender clause contained therein. the said lease was subject to surrender by the lessee and therefore subject to be terminated at a given rental paying period, by the lessor, and constituted a contract for the one year only for which the rental was actually paid; that the first lease to Ambrose Miller by Helen Fern Bland, in January, 1916, constituted constructive notice to the lessees, by reason of its due recordation, of her intention to hold the lessees to

the covenants of development; that the rentals for the second year having been refused by defendant Fern Bland, the said plaintiff W. S. McCray failing to produce oil in paying quantities on said land on or before the 18th day of November, 1917, the lease thereby was terminated.

"3. The court further concludes that there is no sufficient allegation and no sufficient or competent proof offered or introduced of duress or menace; that there is no sufficient pleading or proof of threats of unlawful imprisonment and no sufficient allegation or proof of an effort to restore, as required by statute under proceedings to rescind.

"4. The court further concludes that the plaintiff, Owen W. Bland, has no right, title or interest in and to the land involved in this action and that he and his privies should be forever enjoined from asserting any right, title or interest in and to said land and that the right, title and interest of Helen Fern Bland in and to the fee simple title should be decreed to be valid and perfect and quieted against the claim of all persons claiming by, through, or under the said Owen W. Bland.

"5. The court further concludes as a matter of law that the said Simmons lease is of no force or effect, and that the said lease to Ambrose Miller and his assignees is a valid and subsisting lease in the hands of the said Ambrose Miller and his assigns, and that the title thereto should be quieted against the claim of John H. Simmons and his assigns and that the plaintiffs should be forever enjoined from asserting any right, title or interest therein or thereto.

"6. A decree should be drawn in compliance with the findings of fact and conclusions of law herein made.

"Mark L. Bozarth, District Judge."

An examination of the record discloses that all the findings of fact are in accord with the weight of the evidence, which leaves for our consideration only questions of law.

It will be noted that the court found in its second conclusion of law that by reason of the presence of the surrender clause the Simmons lease was subject to surrender by the lessee. and, therefore, was also subject to be terminated at any given rental paying period by the lessor, and counsel for defendant in error say in their brief that the instant case was decided in favor of their clients by the trial court upon the principles laid down in Brown v. Wilson, 58 Okla. 392, 160 Pac. 94. That case has been overruled by this court in the case of Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86, and we now hold in accord with the great weight of authority that the down payment, or cash consideration, in the lease supports all its covenants and that an oil and gas lease is not subject to cancellation merely because of the

presence of the surrender clause therein. Northwestern Oil & Gas Co. v. Branine, 71 Oklahoma, 175 Pac. 533; Maud Oil & Gas Co. v. Bodkin, 75 Oklahoma, 180 Pac. 959; Magnolia Petroleum Co. v. Saylor, 72 Oklahoma, 180 Pac. 861.

But in support of the judgment of the trial court it is urged that the judgment was right, for the reason that the proof shows Helen Fern Bland did not join in the lease executed by her husband, Owen W. Bland, to Simmons, and that when said lease was executed the said Owen W. Bland owned only one hundred sixty acres of land consisting of one parcel, and that section 1, art. 12 of the Constitution, impressed the said one hundred sixty acres covered by the Simmons lease with the homestead character, regardless of any intention or overt act on the part of the owner. The homestead provision of our Constitution is as follows:

"The homestead of any family in this state, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town, or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner: Provided, that the same shall not exceed in value the sum of $5,000, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value: And provided further, that in case said homestead is used for both residence and business purposes, the homestead interests therein shall not exceed in value the sum of $5,000: Provided, that nothing in the laws of the United States, or any treaties with the Indian tribes in the state, shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the state: And provided further, that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

Section 3343, Rev. Laws of 1910, is almost identical with the above provision.

The finding of the trial court that Owen W. Bland, as the owner of said land, never at any time, during the existence of the marriage relation with Helen Fern Bland, designated or selected the tract of land in controversy, or any portion thereof, as a homestead for himself and family, and that he never at any time had any intention of making said land the homestead of himself and family, nor did he have at any time any intention to improve the same for a homestead or to live and reside thereon as such, being in accord with the weight of the evidence, the precise question presented for determination is:

Does the fact of ownership alone by the head of a family in this state of but one tract of land (not within any city, town, or village) consisting of not to exceed one hundred sixty acres impress said land with the character of the homestead of the family within the meaning of section 1, art. 12 of the Constitution, and section 3343, Rev. Laws of 1910, supra?

An examination of the opinions of this court in cases involving homesteads that have arisen subsequent to the adoption of the Constitution discloses that the court has assumed, in accordance with the almost universal rule, that premises of an owner do not constitute a homestead, unless they are actually occupied and used by him as a residence and home for himself and family, or unless there has been at least a bona fide intention to apply them to such use within a reasonable time. Hyde v. Ishmael, 42 Okla. 279, 143 Pac. 1044; Laurie v. Crouch, 41 Okla. 589. 139 Pac. 304; American Surety Co. of New York v. Gibson et al., 65 Oklahoma, 166 Pac. 112; Illinois Life Ins. Co. v. Rogers, et al., 61 Oklahoma, 160 Pac. 56; Davis v. First State Bank of Idabel, 65 Oklahoma, 166 Pac. 92; Elliott v. Bond, 72 Oklahoma, 176 Pac. 242; McFarland v. Coyle, 69 Oklahoma, 172 Pac. 67. And other cases also hold, in accordance with our Constitution and statute, that where land has once become impressed with the homestead character the homestead right is not lost or impaired by any temporary renting of said homestead when no other homestead has been acquired. German State Bank of Elk City v. Ptachek, 67 Oklahoma, 169 Pac. 1094; McCannon v. Jenkins et al., 44 Okla. 612, 145 Pac. 1163.

In most states occupancy of the premises, or a part thereof, is expressly required by the Constitution or statutes, both as to a rural homestead and an urban homestead. It will be noted that our Constitution expressly requires occupancy as to the urban homestead, but does not, in express terms, require occupancy as to the rural homestead. Then the question to be determined is what signification should be given the word "homestead," as used in that part of our constitutional provision pertaining to rural homesteads. The word has been many times defined, and it has been held that it has both a popular and a legal signification; that in its popular sense it signifies the place of the home—the residence of the family, and that it represents the dwelling house in which the family resides, with the usual customary appurtenances, including the outbuildings of every kind necessary or convenient for family use, and the lands used for the purposes. In re Owings, 140 Fed. 739, 741; Turner v. Turner, 107 Ala. 465, 18 So. 210, 54 A. S. R. 110; Tumlinson v. Swinney, 22 Ark. 400, 76

Am. Dec. 432; Gregg v. Bostwick, 33 Cal. 220, 91 Am. Dec. 637; Ashton v. Ingle, 20 Kan. 670, 27 Am. Rep. 197; Linn County Bank v. Hopkins, 47 Kan. 580, 28 Pac. 606, 27 A. S. R. 309 and note; Galligher v. Smiley, 28 Neb. 189, 44 N. W. 187, 26 A. S. R. 319; Phelps v. Rooney, 9 Wis. 70, 76 Am. Dec. 244; White v. Spencer 217 Mo. 242, 117 S. W. 20, 25, 129 Am. St. Rep. 547, 16 Ann. Cas. 598; Elliott v. Thomas, 161 Mo. App. 441, 143 S. W. 563, 564; Palmer v. Sawyer, 74 Neb. 108, 103 N. W. 1088, 1090, 12 Ann. Cas. 715; Weatherington v. Smith, 77 Neb. 369, 112 N. W. 566; Cushman v. Davis, 79 Vt. 111, 64 Atl. 456; Matthews v. Jeacle, 61 Fla. 686, 55 So. 865, 867; Flowers v. United States Fidelity & Guaranty Co., 89 Ark. 506, 117 S. W. 547, 548; Merrell v. Harris. 65 Ark. 355, 46 S. W. 538, 41 L. R. A. 714, 67 Am. St. Rep. 929; Calmer v. Calmer, 15 N. D. 120, 106 N. W. 684, 686; Moore v. Smead, 89 Wis. 558, 62 N. W. 426; Voelz v. Voelz, 88 Wis. 461, 60 N. W. 707, 708; Upman v. Second Ward Bank, 15 Wis. 449; Tillotson v. Millard. 7 Minn. 513, 518, 82 Am. Dec. 112; Morris v. Brown, 5 Kan. App. 102, 48 Pac. 750. Webster's New International Dictionary defines it as "The land and buildings thereon occupied by the owner as a home for himself and his family, if any, and more or less protected by law from the claims of his creditors." The Supreme Court of New Hampshire, in the early case of Hoitt v. Webb, 36 N. H. 116, thus defines the word: "The home place—the place where the home is. It is the home—the house and the adjoining land where the head of the family dwells—the home farm." And this definition is adopted by Bouvier's Law Dictionary. In White v. Spencer, supra, it is said that the term "homestead" means that tract of land which, being within the statutory limitations as to quantity and value, is occupied and claimed as a homestead. The Arkansas courts say that a homestead necessarily includes the idea of a house for a residence, or mansion house, and includes that part of a man's property which is about or contiguous to the dwelling house; that this may be a mansion, cabin, or a tent, since either is sufficient to bring the land under the protection of the homestead law. Flowers v. United States Fidelity & Guaranty Co, supra; Merrell v. Harris, supra; Williams v. Davis, 31 Ark. 466. Similar language is used by many of the courts, and it has been held that it is not necessary that the homestead be in a compact body, but it may be intersected by highways, streets or alleys, and that it is not limited in extent or quantity. unless made so by law. Whatever is impressed with the homestead character, being either necessary or convenient as the place of residence, constitutes the homestead,

subject to the constitutional and statutory limits as to quantity and value.

In Upman v. Second Ward Bank, supra. the court says: "The word 'homestead' itself means a place of residence, which, again, implies occupancy, possession."

Our constitutional and statutory provisions differ from most of the states in that as to the rural homestead, as above stated, it does not contain express words requiring occupancy or intended occupancy, but there are several constitutions and statutes which are similar to ours in this respect. Section 51, art. 16 of the Constitution of Texas (1876), is as follows:

"The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purpose of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

In a note to section 2, art. 12, Williams' Constitution, it is said:

"All this section is taken from Texas (1876) 16, 50, except the clause providing for the mortgaging of the homestead, which is patterned after Kansas (1859) 15, 9. * * *"

In all probability section 1, art. 12, was likewise patterned after section 51, art. 16 of the Texas Constitution. This section has been many times construed by the Supreme Court of Texas, and it has been uniformly held that there can be no rural homestead in that state "unless the head of the family resides, or intends to reside, on some part of the land claimed." Exall v. Security Mtg. & Trust Co., 39 S. W. 959; Wilkerson v. Jones, 40 S. W. 1046; Steves v. Smith, 107 S. W. 141; Johnson v. Burton, 87 S. W. 181; Murphy v. Lewis, 198 S. W. 1059; Stanley v. Greenwood, 24 Tex. 224; Franklin v. Coffee, 18 Tex. 413; Houston & G. N. R. R. Co. v. Winter, 44 Tex. 597. In the last named case, in construing the constitutional provision of 1869, the court said:

"The Constitution exempts from forced sale 'the homestead of a family not to exceed two hundred acres of land.' (Const., 1869, sec. 15, art. 11.)

"It was first introduced in the Constitution of 1845, and has been reinserted in every Constitution adopted since that time.

"If the homestead is more than two hundred acres of land, then only that quantity of it is secured; and if it be that or less, then all of it is secured. It is not defined in any of the Constitutions, nor are its qualities, attributes, or shape expressed further than in the use of the words 'homestead of a family not to exceed two hundred acres.' That would imply that it was thought to be something that could be known without any further description. It is a definite, ostensible object, to the extent of being the place, which is made the home of the family. It has had some legislative interpretation. The act of 1839, in which it originated, described it as 'fifty acres of land, or one town lot, including his or her homestead and improvements, not exceeding five hundred dollars in value.' (Hart. Dig., art. 1270.) So, too, the act of 1866 describes it as 'two hundred acres of land, including his or her homestead.' (Paschal's Dig., art. 6831.) Homestead is defined to be 'the place of the house,' 'the mansion house, with adjoining land.' (Worcester's Dic.; Bouvier's Law Dic.)

"It has received judicial interpretation in many respects. 'A man's homestead must be his place of residence: the place where he lives.' (Philio v. Smalley, 23 Tex. 502.) In the case of Franklin v. Coffee, Chief Justice Wheeler, in describing what is not a homestead, says: 'In this case there was no house or home upon the land. He had made no preparation or done no acts which would evince a fixed intention and purpose to select and appropriate the place as a home.' (18 Tex. 417.) On the contrary, in the case of Stone v. Darnell, such acts were done as were said to indicate the intention to appropriate the place as a home, and, although not a home literally when levied on but being such at the sale, it was exempt as a homestead. (20 Tex. 15.) The use made of the land may determine its character as part of a homestead or not, as well as its proximity to or remoteness from the residence or mansion house. (Pryor v. Stone, 19 Tex. 373, 374; Methery v. Walker, 17 Tex. 594.) Such use is an object of observation, which indicates and is notice of appropriation for homestead purposes."

The Constitution of the state of Florida (1885) contained this provision: "A homestead to the extent of 160 acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this state, together with one thousand dollars' worth of personal property, and the improvements on the real estate shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife when that relation exists." It will be noted that this provision does not, in express terms, require occupancy, but in Oliver v. Snowden, 18 Fla. 823, 43 Am. Rep. 838, the court, after thoroughly discuss-

ing the meaning of the word "homestead," said:

"Our Constitution, speaking of a homestead and failing to define the word, leaves its definition to the ordinary rule of construction which is that it is to be taken and applied according to the common and popular apprehension of its meaning, which is clearly given in the foregoing citations. It is scarcely possible that it can be misunderstood."

See, also, Murphy v. Farquhar, 39 Fla. 350, 22 South. Rep. 681, and Matthews v. Jeacle, 61 Fla. 686.

The homestead statutes of Alabama, prior to 1886, contained these words: "Owned and occupied by any resident of this state." This phrase was omitted by the codifiers in 1886, and it was contended in Turner v Turner, 107 Ala. 465, 54 Am. St. Rep. 110, that because of their omission, occupancy was dispensed with. The court held to the contrary, however, saying:

"Homestead ex vi termini means the family seat or mansion, and the change of verbiage in our statute by the codifiers, in compiling the Code of 1886, whereby they omitted from section 2507 the phrase 'owned and occupied by any resident of this state' was not intended to affect the well-settled rule recognizing actual occupancy, except in the single case stated, as an essential condition of a valid homestead exemption."

In Meisner v. Hill et al., 92 Neb. 435, 138 N. W. 583, the court, in the first paragraph of the syllabus, held:

"Our statute uses the term homestead in its commonly accepted meaning—the house and land where the family dwells."

We deem it unnecessary to elaborate, if indeed it is possible, upon the meaning of the word "homestead," for we agree with the authorities which hold that it has both a popular and a legal signification; that its popular and legal meaning is the same as hereinbefore defined, and that the word "homestead," as employed in section 1, art. 12 of our Constitution, is to be taken and applied according to the common and popular understanding of its meaning, which is in accordance with the ordinary rule of construction. Therefore, it is our opinion that where, as in this case, the head of a family in this state is the owner of but one tract of land (not within the limits of any city, town, or village) consisting of not more than one hundred and sixty acres, the fact of ownership alone is not sufficient to impress the land with the homestead character where said owner does not reside thereon, never has, and has made no preparation nor evinced any intention of so doing. This conclusion is supported, we think, by the language of the last proviso of the section, to wit: "That any

# 22     78 OKLAHOMA REPORTS

temporary renting of the homestead shall not change the character of the same where no other homestead has been acquired." In Hedgpeth v. Hudson, 61 Oklahoma, 160 Pac. 604, it was held, and we think correctly, that this proviso obviously referred to both rural and urban homesteads. The language of this proviso clearly imports that the land claimed as a homestead must have been impressed with the homestead character, and that when so impressed any temporary renting thereof will not change such character when no other homestead has been acquired.

Lastly, it is contended that under section 2, art. 22 of the Constitution, the Simmons lease is invalid. This provision of the Constitution prohibits the creation or licensing in this state of any corporation "for the purpose of buying, acquiring, trading, or dealing in real estate other than real estate located in incorporated cities and towns and as additions thereto"; and further provides that no corporation doing business in this state shall "buy, acquire, trade, or deal in real estate for any purpose except such as may be located in such towns and cities and as additions to such towns and cities, and, further, except such as shall be necessary and proper for carrying on the business for which it was chartered or licensed; nor shall any corporation be created or licensed to do business in this state for the purpose of acting as agent in buying and selling land."

We do not think this section is susceptible of the construction that a corporation is prohibited from acquiring leases to prospect land for oil and gas, and since no authority is cited which, in our opinion, supports the contention, it cannot be sustained.

It follows that the judgment decreeing that Owen W. Bland had no right, title, or interest in and to the land involved in this action was correct and is affirmed; but that part of the judgment cancelling the lease of the plaintiff in error, W. S. McCray, was erroneous, and this cause is therefore reversed and remanded, with directions to the trial court to set aside that part of the judgment rendered against the said W. S. McCray and to render judgment in accordance with the views herein expressed.

HARRISON, PITCHFORD, JOHNSON, McNEILL, HIGGINS, and BAILEY, JJ., concur; OWEN, C. J., and KANE, J., dissent.

---

On application to file second petition for rehearing. Denied.

Stuart, Cruce & Riddle and O'Meara, Bush & Moss, for plaintiffs in error.

W. H. Kornegay, Owen Owen, Biddison & Gore, and Cottingham & Hayes, for defendants in error.

McNEILL, J. On the application to file a second petition for rehearing, the defendants in error contend the court overlooked one question raised by their brief, which is decisive of the case at bar and was not passed upon in the opinion of the court. This question is stated as follows:

"The decision of this court, applying to the rights of the parties hereto the rule of law announced by this court in the case of Rich v. Doneghey, 177 Pac. 86, and refusing to apply the principle or rule of law laid down in Brown v. Wilson, 58 Okla. 392, wherein it was held that a 'surrender clause' oil and gas lease is a nudum pactum, and conveys no rights, either to the lessor or lessee, which can be enforced as against the other, other than the right to drill a well within the primary period of such a lease, results in depriving the defendants in error of their property without due process of law and impairs their rights under the oil and gas leases from Fern Bland, taken by them while the principle announced in Brown v. Wilson, supra, was in force in this state, in violation of section 1, art. 14, and sec. 10, art. 1, of the Constitution of the United States, and further violates the doctrine of stare decisis recognized and applied by this court in its former decisions."

The opinion omitted to pass on said question, and we will now consider the same, upon this application. We do not think the defendants in error bring themselves within the rule above announced.

The facts are that on November 18, 1915, Owen Bland executed an oil and gas lease on 160 acres of land to Simmons for a term of five years. The lease provided the lessee was to complete a well within 12 months or pay a certain annual rental. January 6, 1916, Owen Bland deeded 80 acres of said land to Helen Fern Bland. November 15, 1916, the Simmons lease was assigned, and thereafter by different assignments became the property of W. S. McCray et al. Between November 15, 1916, and November 18, 1916, Helen Fern Bland accepted $80 as the rental on her 80 acres to cover the rental period from November 18, 1916, to November 18, 1917. January 10, 1916, Helen Fern Bland executed an oil and gas lease to Ambrose Miller, who assigned a certain portion of the same to the other defendants in error. November 9, 1916, a second oil and gas lease was executed by Helen Fern Bland to Ambrose Miller. All of the oil and gas leases were filed for record immediately or within a very short time after their execution. The answer of defendants contains the following statement:

"That these defendants and the said W. N. Sill are such owners of a certain oil and gas lease dated January 10, 1916, executed by Helen Fern Bland to Ambrose Miller * * * and under and by virtue of a subsequent lease between the same parties dated November 9, 1916 * * * made to cure a clerical defect in the first lease aforesaid."

And also the further statement:

"That Helen Bland at the time of accepting the deed from Owen Bland * * had no knowledge of the existence of the lease relied upon by the plaintiff, and the said Helen Bland after becoming aware of the existence of said lease repudiated said leases, and declared them void, and still repudiates and declares them void. * * * That at the time of taking said lease, in January, 1916, none of the defendants were aware of the existence of the lease relied upon by plaintiffs, and that said lease of January 10, 1916, was supported by valuable consideration from Ambrose Miller to the defendant Helen Fern Bland."

The defendants in error in their answer in the trial court claim title by reason of the lease executed to them January 10, 1916, and assert there was a valuable consideration paid for said lease, and that the lease dated November 9, 1916, was taken only for the purpose of curing a clerical defect in the lease dated January 10, 1916. This being true, we are unable to see how the defendants in error could claim they obtained their lease relying upon the rule of law or principle announced in the case of Brown v. Wilson, supra, or how the overruling of that case would impair any of their rights obtained in their lease contract dated January 10, 1916, for the reason the opinion in the case of Brown v. Wilson was not rendered until January 11, 1916, or one day after the defendants acquired their lease. The opinion in the Brown v. Wilson case did not become final until October 10, 1916, so the rule of law contended for by the defendants in error, even if correct, has no application to their case, for the reason their lease was obtained prior to the time the principle announced in the Brown v. Wilson case was in force in this state.

While counsel for defendants in error argue that the lease dated November 9, 1916, brought them within the rule, their answer and their pleadings allege that this lease was taken only for the purpose of curing a clerical error in the first lease and the consideration was paid for the first lease. Counsel also suggest that the case of Brown v. Wilson was cited with approval by this court in the case of Warner v. Page, 59 Okla. 259, 159 Pac. 264, but if they rely upon that case, they have taken their lease in direct

violation of the rule and principle announced in that case, as the court therein said:

"Where a lease for oil and gas provides, among other things, that the lessee shall begin operations within six months, and, upon failure to do so, shall pay annually $500 into a certain bank, or to the lessor direct, and that failure to commence operations or to pay shall render the lease null and void, held, that such lease was a mere option preventing the lessor, after receiving the delay money, from leasing to another for the period of one year from the date of such payment."

The Simmons lease, or the one on which plaintiffs in error rely, was the prior lease on the premises, and was executed by Owen Bland on November 18, 1915, for a term of five years, and contained the provision:

"That the lessee agrees to complete a well on said premises or pay an annual rental," etc.

Then, according to the lease, and even under the decision of Brown v. Wilson, the plaintiffs in error's lease would not be nudum pactum, until November 18, 1916, and under the rule announced in the case of Warner v. Page, supra, the lessor or his assigns were prevented from leasing to another for a period of one year from the date of the lease, or until November 18, 1916. That being true, defendant's lease was taken in direct violation of the rule and principle announced in the case of Warner v. Page, upon which they rely.

As to the doctrine of stare decisis, we think it has no application to the case at bar. While the rule of stare decisis might have been argued with force in the Rich v. Doneghey case, supra, which overrules the Brown v. Wilson case, supra, yet, after that case has been overruled, it has no application in this case. This court, in the case of Inman v. Sherrill, 29 Okla. 100, 116 Pac. 426, speaking through Justice Kane, said:

"Where a series of decisions of a court of last resort have been accepted and acted upon as the proper interpretation of the law for a long time, courts are slow to interfere with principles announced in the former decisions, and often uphold them even though they would decide otherwise were the question a new one."

The defendants in error, in our judgment, can claim no right under the rule of stare decisis, for the reason their answer admits they obtained their property rights in their lease, if any, prior to the time the rule or principle was announced in the Brown v. Wilson case, supra.

The second contention of defendants in error is stated as follows:

"Independent of any statutory provision,

where a contract has been interpreted by the highest court of a state and the obligation and rights of parties thereunder determined, the rights of any person purchasing similar contracts subsequent to the decision of the court, interpreting the same, cannot be impaired by a subsequent decision of the court."

This we do not think is the correct statement of the law. The rule is announced in 6 Ruling Case Law, 324, as follows:

"In accordance with the rule stated in the preceding paragraph, the decisions of the state courts are not 'laws' within the prohibition against the impairment of the obligation of contracts, and therefore the Supreme Court of the United States has no jurisdiction to review a judgment of a state court, on the ground that the obligation of a contract has been impaired, unless some legislative act of the state has been upheld by the judgment sought to be reviewed. For the same reason, a decision by the holding unconstitutional a statute held to be constitutional by such decision does not impair the obligation of a contract entered into before the latter decision was rendered. There is no vested right in the decisions of a court, and a change of decisions of a state court does not constitute the passing of a law, although the effect of such change is to impair the validity of a contract made in reliance on prior decisions."

Vol. 12, Corpus Juris, 990, states as follows:

"The prohibition of the contract clause of the Constitution is directed at legislative, not judicial, action. Acting, however, under a contrary impression, induced principally by misinterpretation of a dictum of Chief Justice Taney, some courts have held, in general terms, that the clause is violated by a judicial decision which overrules previous decisions and thereby impairs the obligation of a contract under the law as construed when it was made. But it is now definitely and authoritatively settled that the contract provision of the Constitution does not apply to the decision of a state court, where such decision is not based on a constitutional or statutory provision. The mere fact that the decision of the state court is against the validity of a contract either in whole or in part does not of itself present a question under the contract clause, nor give the federal courts jurisdiction to review the decision, and this rule applies even where the decision of the state court complained of changes a rule of the common law which, by virtue of previous judicial decisions, was established and in force when the contract was made."

Black's Constitutional Law (3d Ed.) 722 states as follows:

"The obligation of the contract must have been impaired by some law, that is, some constitutional provision or statute; but a decision of a court is not a 'law', and a change

of judicial decisions is not obnoxious to this constitutional prohibition, though it may invalidate contracts previously sustained."

The Supreme Court of the United States, in the case of Cleveland and Pittsburg Ry. v. City of Cleveland, Ohio, 235 U. S. 50, 59 Law Ed. 127, stated as follows:

"It is equally well settled that an impairment of the obligation of the contract, within the meaning of the federal Constitution, must be by subsequent legislation, and no mere change in judicial decision will amount to such deprivation. Ross v. Oregon, 227 U. S. 150, 161, 57 L. Ed. 458, 463, 33 Sup. Ct. Rep. 220, Ann. Cas. 1914-C, 224; Moore-Mansfield Constr. Co. v. Electrical Installation Co., 234 U. S. 619, 624, 58 L. Ed. 1503, 1505, 34 Sup. Ct. Rep. 941."

The Supreme Court of the United States, in the case of Cross Lake Shooting and Fishing Club v. State of Louisiana, 224 U. S. 632, 56 L. Ed. 924, stated:

"But if there be no such law, or if no effect be given to it by the state court, we cannot take jurisdiction, no matter how earnestly it may be insisted that that court erred in its conclusion respecting the validity or effect of the contract; and this is true even where it is asserted, as it is here, that the judgment is not in accord with prior decisions on the faith of which the rights in question were acquired."

To the same effect is the case of Central Land Company v. Laidley, 159 U. S. 103, 40 L. Ed. 91. The defendants in error relied upon the case of Muhlker v. New York & H. R. R. Co., 197 U. S. 544, 49 L. Ed. 872, and Sauer v. N. Y., 206 U. S. 536. But these cases are based upon a legislative enactment, and the question determined by the Supreme Court of the United States was the power of the legislature to impair a contract. These cases are distinguished in the case of Crigler v. Shepler (Kan.) 101 Pac. 619, 23 L. R. A. (N. S.) 500, the court there stating the rule as follows:

"A person who is not a party or privy in an action cannot have a vested right in an erroneous decision made therein."

And under the note in 23 L. R. A. (N. S.) 502, the Laidley and Muhlker and Sauer cases are distinguished; but since said note was written distinguishing said case, the Supreme Court of the United States, in the later decisions of Cleveland & Pittsburg Ry. Co. v. Cleveland, and Cross Lake Shooting and Fishing Club v. Louisiana, supra, has adhered to the rule announced in the Laidley case.

Although defendants in error in their brief suggest that while the Brown v. Wilson case did not construe any statute, it had the effect of construing sections 911 and 926, Rev.

Laws 1910, yet with this we cannot agree, as the opinion neither in the Wilson case nor in the Rich v. Doneghey case refers to said sections of the statute, nor in our judgment have they any applications to the same.

For the reasons stated, the application to file a second petition for rehearing is denied.

OWEN, C. J., and RAINEY, KANE, and JOHNSON, JJ., concur.