Note—See under (1) 36 Cyc. pp. 588, 596, 701; (2) 36 Cyc. p. 784 (1926 Anno).

---

### DEES v. BROWN et al.

No. 11370—Opinion Filed Jan. 27, 1925.

**Indians—Conveyance of Lands—Rights of Mississippi Choctaw.**

Until a Mississippi Choctaw Indian has, in good faith, resided for three years upon land certified to him, and made proof thereof, as required by the Act of Congress approved July 1, 1902 (32 Stat. 641, c. 1362), commonly called the "Supplemental Treaty", of said continuous bona fide residence, no alienable interest is acquired by such Indian to the lands certified to him, and he cannot legally convey the same. Blackwell v. Harts, 66 Okla. 94, 167 Pac. 325.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by Mary E. Dees against Eli W. Brown, Rebecca O. Brown and J. O. Chelf for possession of real estate, cancellation of deeds, and to quiet title. Judgment for defendants, and plaintiff appeals. Reversed, with directions.

Porter Newman and Sandlin & Winans, for plaintiff in error.

Wilkinson & Saye and Womack, Brown & Cund, for defendants in error.

Opinion by THREADGILL, C. The undisputed facts in the case are as follows:

Mary E. Dees, plaintiff, was a Mississippi Choctaw Indian of one-sixteenth blood, and duly enrolled by the Commissioner of the Five Civilized Tribes on January 14, 1907, On February 16, 1907, she selected the N. W. ¼ of the S. W. ¼ of section 15; N. E. ¼ of S. E. ¼; N. W. ¼ of S. E. ¼ of S. E. ¼; S. E. ¼ of S. E. ¼ of N. E. ¼ of section 16, T. 2 S., R. 7 W., Stephens county, being the land in controversy, as a part of her prospective allotment, and the certificate of selection was issued to her for the same during the month of January, 1910. Said Mary E. Dees submitted to the Commissioner of Indian Affairs proof of residence in the Choctaw and Chickasaw Nations for the three years required by law on March 4, 1910, her proof was approved, and patent ordered issued for the lands she had selected, a part of which were the lands above described. Patent was issued to her April 19, 1911. On July 27, 1908, the said allottee, with her husband, W. H. Dees, executed a warranty deed to R. A. Hefner and Oswell S. Parker, which was acknowledged July 28, 1908, describing the lands in controversy. June 1, 1911, Hefner and his wife deeded their interest in the land to Eli W. Brown, and thereafter, on September 5, 1911, Parker and his wife deeded their interest to said Eli W. Brown. Thereafter, June 8, 1918, plaintiff filed her petition in this action against Eli W. Brown for possession, cancellation of the deeds, and to quiet title. January 7, 1919, the defendant, Eli W. Brown, died, and the cause was, thereafter, revived in the name of W. N. Brown, as the administrator. After the issues were joined the cause was tried to the court, and resulted in judgment for defendant and plaintiff appealed.

The question of this case is whether or not the deed made by Mary E. Dees, the allottee, on July 27, 1908, conveying the land in controversy by warranty deed to Hefner and Parker, was a valid deed. This question is determined and settled in favor of the contention of the plaintiff in error and against the defendant in error in the cases of Criner v. Farve et al., 44 Okla. 618, 146 Pac. 10, and Blackwell v. Harts et al., 66 Okla. 94, 167 Pac. 325, and Franklin v. Lynch et al., 233 U. S. 269, 34 Sup. Ct. 505.

We, therefore, recommend that the cause be reversed with directions to the trial court to set aside the judgment theretofore rendered and enter judgment for the plaintiff in error.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 513.

---

### SHIPLEY et al. v. THOMPSON.

No. 13322—Opinion Filed April 1, 1924.

Rehearing Denied May 13, 1924.

Second Rehearing Denied Feb. 3, 1925.

**1. Trusts — Resulting Trusts — Degree of Proof—Purchasers Without Notice.**

In order to establish a resulting trust in favor of a widow in property conveyed by her husband during his lifetime the burden rests upon her to establish her claim by clear and convincing proof, and especially is this true where she has received the benefits from his sale of the property, and the purchaser took without notice.

**2. Homestead—Intention—Inconsistent Acts.**

Where a husband purchases land which is practically unimproved and the only evidence of intention to make it a homestead is oral declarations, and in contradiction of these he moves to another county, afterward sells the land in question and uses the proceeds to purchase property there, which he occupies with his family until his death, the homestead character is not impressed upon the land sold by him so as to render its sale void in favor of his widow who did not join in the sale.

**3. Appeal and Error—Review of Evidence—Sufficiency.**

Where there is evidence in the record which reasonably supports the verdict and judgment, this court will not resolve any mere conflict in the evidence, but will affirm the judgment.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Delaware County; A. C. Brewster, Judge.

Action by Leah Shipley et al. against Narcissa Thompson et al., to establish title to and recover possession of certain described real estate. Judgment for defendant Narcissa Thompson, from which this appeal is prosecuted. Affirmed.

This action was commenced August 31, 1920, by Leah Shipley and Lucy Hickman, and by Jessie Thompson and Howard Thompson, minors, by their next friend, Leah Shipley filing in the district court of Delaware county their petition against J. H. Hooper, Ethel Hooper, Narcissa Thompson, Luther J. Walker, and Elsie Walker, as defendants, in which petition plaintiffs alleged, in substance, that they were the widow and children, respectively, of Clem Thompson, deceased; that Leah Shipley and Clem Thompson during their married life acquired by purchase the lands described in the petition from Ethel Hooper and J. H. Hooper; that said land was purchased with the joint funds of Leah Shipley and Clem Thompson, and that they were joint owners of said premises, and that since his death plaintiffs owned by inheritance Clem Thompson's half interest therein; that defendants claim right, title, and interest in said premises adverse to plaintiff, but that their rights to said premises are inferior to the rights and title of plaintiffs therein, and pray that they be adjudged the owners of the legal and equitable title in fee simple in said lands and for possession of the same.

All of the defendants except Narcissa Thompson filed disclaimers, and Narcissa Thompson answered by general denial and by claim of title and possession of said premises through purchase from Clem Thompson, deceased, and praying that her title thereto be directed as against the claims of the plaintiffs herein.

Trial was had October 11, 1921, resulting in a verdict and judgment in favor of defendant, Narcissa Thompson. After unsuccessful motion for new trial, the case has been brought to this court by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiffs and defendants, respectively, as they appeared in the trial court.

J. W. Miller and Ira Miller, for plaintiffs in error.

Marshall & Ingram, for defendant in error.

Opinion by LOGSDON, C. All of the assignments of error are presented and argue in the brief of plaintiffs under three propositions, which may be stated thus: First, that Clem Thompson took title to the lands in controversy for himself and as trustee for the plaintiff, Leah Shipley, each owning an undivided half interest therein; second, that the premises in controversy constitute the homestead of Clem Thompson and the plaintiff, Leah Shipley, and that the same could not be alienated by the said Clem Thompson without the consent of the plaintiff, Leah Shipley; third, that the defendant, Narcissa Thompson, is wrongfully in possession of said premises without right or title thereto.

The facts relied upon by plaintiffs to established a resulting trust in the premises in controversy are in substance these: Some ten years prior to the death of Clem Thompson he and his wife, Leah Shipley, had a falling out and agreed upon a division of their property; this division was evidenced by written memoranda; their separation was of short duration, and after their reconciliation the control and management of said property was taken over by Clem Thompson and was handled by him in the same manner as it had been prior to their separation; the property which was divided between them was personal property and consisted of cows, horses, and hogs; after their reconciliation this property was sold and traded at various times and other like property acquired by the parties; in January, 1918, Clem Thompson traded this personal property for a car and then traded the car to his sister, Ethel Hooper, for the 30 acres of land in controversy.

It is upon these facts that plaintiffs rely to establish a resulting trust in favor of

Leah Shipley to an undivided half interest in the land. Comp. Stat. 1921, sec. 8462, provides:

"No trust in relation to real property is valid unless created or declared: First, by a written instrument, subscribed by the grantor or his agent thereto authorized by writing. Second, by the instrument under which the trustee claims the estate affected; or, Third, by operation of law."

In the case of Hayden et al. v. Dannenberg et al., 42 Okla. 776, 143 Pac. 859, in defining the degree of proof required to establish a resulting trust this court said:

"A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory and trustworthy kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement and before a court of equity will be warranted in making a decree therefor the evidence must be clear, unequivocal, and decisive."

It is clear that the facts relied upon by plaintiffs to establish a resulting trust in the property here involved fall far short of that degree and character of proof required under the rule above announced.

Under the second proposition the facts disclosed by the record are substantially that at the time of the purchase of this land by Clem Thompson in January, 1918, it was unimproved land; that he rented it for the crop season of 1918 and made no effort of any kind or character to place improvements thereon with a view to occupying it as a homestead for himself and family; that in July following he and his wife moved to Drumright for the purpose, as she testifies, of earning money with which to improve and make a home on this 30 acres of land; in September, 1918, Clem Thompson returned to Delaware county temporarily, and while there received and cashed a check signed by Narcissa Thompson for the sum of $600, said check bearing on its face the notation, "For land"; that upon his return to Drumright he purchased a rooming house for the sum of $890, which he and his wife operated until his death in February, 1919; that they had no money prior to their removal to Drumright; that the 30 acres of land in controversy was the only land that Clem Thompson owned during 1918; that his widow continued to live in Drumright and to operate said rooming house until about the time she intermarried with her present husband, Shipley, when she sold said rooming house for $2,000; that neither Clem Thompson nor his wife ever lived upon the land in controversy, or made a crop thereon or placed any improvements of any kind or character upon it.

Upon this state of facts the language of this court, in McCray v. Miller, 78 Okla. 16, 184 Pac. 781, is very applicable, where it is said at page 21:

"We deem it unnecessary to elaborate, if indeed it is possible, upon the meaning of the word 'homestead,' for we agree with the authorities which hold that it has both a popular and legal signification; that its popular and legal meaning is the same as hereinbefore defined, and that the word 'homestead,' as employed in section 1, art. 12, of our Constitution, is to be taken and applied according to the common and popular understanding of its meaning, which is in accordance with the ordinary rule of construction. Therefore, it is our opinion that where, as in this case, the head of a family in this state is the owner of but one tract of land (not within the limits of any city, town, or village) consisting of not more than 160 acres, the fact of ownership alone is not sufficient to impress the land with the homestead character where said owner does not reside thereon, never has, and has made no preparation nor evidenced any intention of so doing. This conclusion is supported, we think, by the language of the last proviso of the section, to wit: 'That any temporary renting of the homestead shall not change the character of the same where no other homestead has been acquired.' In Hedgpeth v. Hudson 61 Okla. 121, 160 Pac. 604, it was held, and we think correctly, that this proviso obviously referred to both rural and urban homesteads. The language of this proviso clearly imports that the land claimed as a homestead must have been impressed with the homestead character, and that when so impressed any temporary renting thereof will not change such character when no other homestead has been acquired."

Under their last contention plaintiffs insist that the testimony is insufficient to show title or right of possession in Narcissa Thompson. Upon this branch of the case the testimony shows substantially that the deed from Ethel Hooper and her husband to Clem Thompson covering the land in controversy was lost or destroyed and was never placed of record. In September, 1918, when he returned to Delaware county from Drumright it is shown that the record title to this land was still in Ethel Hooper; that on September 16, 1918, Ethel Hooper executed a deed to this land to Narcissa Thompson; that Clem Thompson was present at the time this deed was executed; that he received a check for $600 filled out in his own handwriting and signed by Narcissa Thompson, which he indorsed, and which was paid October 4, 1918. Several witnesses testified that this deed from Ethel Hooper to Narcissa Thompson was executed at the direction of Clem Thompson, and the conclusion is well nigh irresistable that he adopted this

shorter method of conveying the property, thus saving the expense of recording a new deed from Ethel Hooper to him to take the place of his original deed which had been lost or destroyed. Immediately after the execution and delivery of this last deed, Narcissa Thompson took possession of the premises through a tenant and has been continuously in possession thereof since that time. Narcissa Thompson mailed this deed to the county clerk's office of Delaware county for record, but, owing to an incomplete or incorrect address, the letter went to the dead letter office at Washington, D. C. After the death of Clem Thompson in February, 1919, Ethel Hooper and her husband executed a second deed covering this land to Narcissa Thompson, reciting therein that it was given in lieu of the previous deed between the same parties which had been lost or destroyed. After the recording of this second deed, the original deed to Narcissa Thompson was returned to her from the dead letter office at Washington, D. C., and was then placed of record. There is nothing in the record which in any way tends to show that there was fraud in the execution of the first deed from Ethel Hooper and her husband to Narcissa Thompson, or that the circumstances under which their second deed was executed were not as above stated. With the record in this condition there is no evidence seriously tending to impeach the title of Narcissa Thompson.

The judgment of the trial court herein should, therefore, in all things be affirmed.

By the Court: It is so ordered.