**GARRET et ux. v. GETZENDANER et al.**

No. 14734—Opinion Filed June 2 1925.

1. **Homestead—Presumption—Indian Homestead Allotment.**

The homestead as designated in an Indian allotment of land creates no presumption that the same constitutes a homestead as defined by the Constitution and laws of the state.

2. **Same — Necessity for Occupancy as a Home—Indian Territory Law.**

The homestead law in force in the Indian Territory before statehood required occupancy with the intention to make a home as necessary to impress the homestead char-

acter on the land selected, and where the owner, before occupying the land, leased it for five years, without any reservations as to occupancy, and the lessee took possession, under the lease and thereafter employed the lessor as a hired hand and permitted him with his wife to live on the premises as a hired hand for a short period of time, such occupancy does not meet the requirement of the statute for the purpose of impressing the homestead character.

**3. Appeal and Error — Review—Conflicting Evidence—Homestead Occupancy.**

Where the testimony is conflicting on the question as to whether or not the owner ever occupied the land as a homestead, under the Arkansas law, on appeal, this court will not disturb the finding of the trial court on this issue, if the evidence reasonably tends to support the conclusion reached.

**4. Homestead — Rural Homestead of Different Tracts.**

The Oklahoma law provides that the homestead may consist of one or more tracts of land, not exceeding 160 acres, to be selected by the owner, and requires occupancy or intention to occupy one tract with the intention to make it a home, and the actual use or intention to use the other tract or tracts in connection with the one occupied, as prerequisite to impressing the homestead character on the lands selected.

**5. Same — Homestead Status a Question of Fact.**

The question as to whether or not the homestead character has been impressed upon the land claimed to be selected as the homestead whether one tract or more than one tract, is a question of fact to be established by the party claiming the homestead right, and is to be determined by the court or jury, trying the case, from all the facts and circumstances of the particular case.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Okmulgee County; James Hepburn, Judge.

Action by Phillip Garret and Stella Garret against Ralph W. Getzendaner and Bernard B. Jones, for cancellation of deeds, recovery of real estate, and damages. Judgment for defendants, and plaintiffs appeal. Affirmed.

James M. Hays, for plaintiffs in error.

Cochran & Ellison, for defendants in error.

Opinion by THREADGILL, C. The plaintiffs in error, Phillip and Stella Garret were husband and wife; they married in 1905, when Stella was only about 14 years of age;

they were Creek freedmen and, as such, each had 40 acres of land as an Indian homestead and 120 acres of surplus. Stella's land was in Creek county and Phillip's was in Okmulgee county. The land in controversy was the Indian homestead allotment of Phillip. At the time he selected it and allotted it, it was being used for pasture by the defendant Getzendaner, and in 1904, Phillip gave him a lease contract on it for five years. Getzendaner had it enclosed with other lands in adjoining sections and occupied and used it for ranch purposes. After Phillip and Stella married in the spring of 1905, they lived together on the ranch of Getzendaner, and Phillip was in his employ as a hired hand. The evidence is conflicting as to whether they lived in a little house on this 40 acres in section 32, T. 15 N., R. 11 E., or in a house on a tract adjoining this section being section 30. Plaintiffs say they lived in a house on this 40 and defendant Getzendaner says they lived in a little house near the ranch house on section 30. In the fall of 1905, Phillip and his wife moved over into Creek county and settled on the homestead 40 acres of Stella. In the spring of 1907, or 1908, Phillip and Stella separated. The testimony is conflicting on this point. In September, 1908, Stella filed suit for a divorce on the ground of desertion, and made affidavit that Phillip deserted her on April 1, 1907, and that he was, at the time the suit was filed a nonresident of the state of Oklahoma. The divorce action was abandoned and the relation of husband and wife continued, but they did not live together and maintain a home after the separation. On September 16, 1908, Phillip Garret, without being joined by Stella, his wife, deeded the 40 acres in controversy to the defendant B. B. Jones for a valuable consideration. On September 21, 1908, Phillip made an affidavit that he had abandoned the said 40 acres of land as a homestead in the fall of 1905, and moved onto his wife's land as their homestead and had their home there until they separated, in 1908. Defendant Getzendaner bought the land from Jones. On September 18, 1908, Stella Garret deeded the 40 acres to R. P. Barker and thereafter on March 3, 1910, Barker deeded his interest to Getzendaner. After the separation Stella lived with her sister and finally located at Sand Springs and Phillip seems to have had no certain abiding place; he worked and lived and traveled in many states and occasionally returned to Oklahoma. On October 14, 1920, this action was brought to recover the 40 acres of land as a part of the homestead of the plaintiffs on the theory that

they had impressed it with a homestead character by living on it from the spring to the fall of 1905, and that this homestead character impressed, under the Arkansas law in force at that time, was brought over by the constitutional schedule into statehood as one of the vested rights of the plaintiffs, and they contend they could not divest themselves of the homestead title without making a joint deed, and, therefore, the deeds made and of record against the land were void and subject to cancellation. After issues joined the cause was tried to the court on March 15, 1923, and resulted in judgment for the defendants, and the plaintiffs appealed, asking for a reversal on the ground that the judgment is contrary to the evidence and contrary to the law.

1. The question for determination is whether or not the evidence is sufficient to show that the 40 acres of land was impressed with the character of a homestead, under the law of this state. It was called a homestead under the allotment acts of Congress and allotted to the allottee, as such, but this did not give it the homestead character under the state law. Hyde v. Ishmael, 42 Okla. 279, 143 Pac. 1044; Norton v. Kelley, 57 Okla. 222, 156 Pac. 1164; Belt et al. v. Bush et al., 74 Okla. 94, 176 Pac. 935; Chisholm v. Creek Development Co., 273 Fed. 589.

2. Plaintiffs contend that they impressed the homestead character on the land by living on it from the spring of 1905 to the fall of 1905. The fact involved here is disputed, but granting that they did live on it, occupied a dwelling house on it, the mere living on it would not be sufficient to impress the homestead character. There must be the manifest intention of making the land the permanent dwelling place exclusive of any other dwelling place. At the time they claim they lived on it the land was leased to the defendant, Getzendaner, and he had it enclosed and was in possession and was using it as a part of his ranch, and plaintiffs had just married, and had no property except their lands, and Phillip Garret was a hired hand in the employ of the defendant, Getzendaner on his ranch, and he and his wife lived there by permission of the lessee with no more rights than any other hired hand. The evidence does not show the plaintiffs had the right of occupancy and a house reserved for such purpose under the lease contract, and their living on the land, by permission of the lessee, and for the purpose of rendering services for wages as a hired hand to the lessee, would be a purpose very different from living on the land and oc-

cupying a house by right of a homestead interest, and for the purpose of making it their permanent dwelling place. The fact is, they moved to the Indian homestead land of Stella Garret in the fall, which was in the adjoining county, and a considerabe distance from this 40 acres in controversy, and they never did move back to this 40 acres, and at the time they claimed they lived on it their occupancy was not even that of a subtenant for a definite term, but subject to removal at any time at the will of the lessee; such a residence could not be in the nature of a homestead residence. The homestead statute in force at that time was section 2995, Mansfield's Digest Laws of Arkansas, which reads as follows:

"The homestead, outside any city, town or village, owned and occupied as a residence shall consist of not exceeding 160 acres of land, with improvements thereon, to be selected by the owner, provided the same shall not exceed in value the sum of $2,500 and in no event shall the homestead be reduced to less than 80 acres without regard to value."

The Constitution of Arkansas uses the same language in defining the homestead. In the case of Williams v. Dorris et al., 31 Ark. 466, the term "homestead" as used in the Constitution and statute is construed to mean a home as follows:

"The homestead is the place of a home or house—that part of a man's landed property which is about and contiguous to his dwelling house. A homestead necessarily includes the idea of a house for residence or mansion house. The dwelling may be a splendid mansion, a cabin, or a tent. If there be either, it is under the protection of the law, but there must be a home residence before it and the land on which it is situated can be claimed as a homestead. Tumlinson v. Swinney, supra; McKenzie v. Murphy, 24 Ark. 157. The married man or head of the family must occupy the land—it must be his home or dwelling place—to impress upon it the character, and place it under the protection of the law, as a homestead. Johnson et al. v. Turner, Adm'r, 29 Ark. 280; Elston & Green v. Robinson, 23 Iowa, 210; Charles et al. v. Lamberson, 1 Iowa, 435."

In the Johnson-Turner Case the court quotes with approval Story's definition of a homestead, section 44, Conflict of Laws, where he says: "Two things concur to constitute a domicile, first, residence; and secondly, the intention to make it the home of the party."

It appears that under the Arkansas law the occupancy in a house on the land, on the part of the head of the family, being

the owner, with an intention to make the house the home of the family, was necessary to impress the homestead character. It also appears that occupancy, as used in the constitutional and statutory provisions, means possession by virtue of ownership, and it could not mean otherwise. This being correct, in the case at bar, under the facts above stated, could it be said that plaintiffs occupied the house on the land at any time by virtue of ownership, or was it not rather by virtue of the husband being hired to the lessee for wages? The answer to the question is at the threshold of stamping a homestead character and invoking the right. We do not think they had any right of occupancy against the leasehold estate. There were no such reservations in the lease and none by agreement after the lease was made. We find decisions holding that the homestead character may be impressed under a cotenancy and is consistent therewith, and where the owner, after occupying the dwelling and being in possession of the dwelling, may lease out to tenants all the lands for their use and possession and for indefinite terms and still retain the homestead rights in the land, and we also find decisions holding that after the homestead character has been impressed by occupancy, the owner may rent or lease all the lands, including the dwelling place or home place, temporarily without affecting the homestead rights, but we find no case and plaintiffs have furnished none where the owner, not being the head of the family, and not being in the actual possession of the land, leased the land for a term of years prior to becoming the head of the family with no reservations as to homestead rights and while the lease was in full force and the lessee in possession, the owner of the land with his family moved into a dwelling house on the land, by permission of the lessee, and by virtue of being a hired hand, in the employ of the lessee, and thereafter moved away leaving the premises in possession of the lessee, holding this such an occupancy as to impress the homestead character for any purpose under the Arkansas statutes or any other statutes providing for homestead rights.

3. However, since the evidence is conflicting on the question of plaintiffs' occupancy —plaintiffs testifying that they had lived in the house on the land from the spring of 1905, until the fall of 1905, and the defendant Getzendaner testifying that they did not —we are unable to say the weight of the evidence is in favor of the plaintiffs. We must, therefore, conclude that the land was not impressed with the homestead character

under the law in force in the Indian Territory in 1905.

4. This brings us to consider the homestead status of this tract of land in the fall of 1908, at the time Phillip Garret deeded it to B. B. Jones, and his wife, Stella Garret, deeded it to R. P. Barker. Under the Constitution of the state commencing with November 16, 1907, and the statute creating the homestead rights, we have a somewhat different situation from the provisions above discussed. Section 1, article 12, of our Constitution provides as follows:

"The homestead of any family in this state, not within any city, town, or village, shall consist of not more than 160 acres of land, which may be in one or many parcels, to be selected by the owner."

The statutory provision, section 6597, is the same. There is no difference in the meaning of the homestead right as shown by authorities above cited and McCray v. Miller et al., 78 Okla. 16, 184 Pac. 781. The principal difference seems to be in the manner of making up the homestead and the things necessary to be done in making the selection and impressing the homestead character. The Arkansas law provided for one tract or adjoining tracts, all in one body, not exceeding 160 acres, and not exceeding $2,500 in value, and the Oklahoma law provides for one or more tracts not exceeding 160 acres in the aggregate, without regard to the value. The Arkansas law requires actual occupancy with the intention to make it the family dwelling place exclusive of any other, and the Oklahoma law requires occupancy or an intention manifested by acts showing good faith to occupy one tract as a family dwelling place, or, where there are two or more tracts making up the homestead, the occupancy of one or an intention to occupy one and an actual selection of the other tracts for the benefit of the family in connection with the tract actually occupied or to be occupied. The differences appear in the cases cited under the discussions above of the Arkansas homestead as well as the following Oklahoma cases: Hyde v. Ishmael, 42 Okla. 279, 143 Pac. 1164; McCray v. Miller, 78 Okla. 16, 184 Pac. 781; Harris v. Cherokee State Bank of Lenapah, 80 Okla. 151, 198 Pac. 878; Johnson v. Johnson, 82 Okla. 259, 200 Pac. 204; McFarland v. Coyle, 69 Okla. 248, 172 Pac. 67; Sharpe v. Wright, 88 Okla. 16, 211 Pac. 70; Osmon v. Payton, 98 Okla. 194, 223 Pac. 382; Harris v. Watts, 102 Okla. 36, 226 Pac. 40; Williams, Sheriff. v. Watkins, 93 Okla. 112, 219 Pac. 643.

5. The question as to whether or not the

homestead character has been impressed upon the land claimed to be selected as the homestead, whether one tract or more than one tract, is a question of fact to be established by the party claiming the homestead right, and is to be determined by the court or jury trying the case from all the facts and circumstances shown by the evidence. McDonald et al. v. Miller et al., 77 Okla. 97, 186 Pac. 957; Williams, Sheriff, v. Watkins, 93 Okla. 112, 219 Pac. 643.

Under the Constitution it was not necessary for the plaintiffs to have occupied the land in controversy to make it the homestead or a part of the homestead, but it was necessary for them to show by some visible signs that they had selected it to be used in connection with the tract of land on which they lived, or intended to live as their homestead.

We have examined the evidence in the case and we do not think that there are any facts showing that the plaintiffs selected this land as a homestead under the Arkansas law as a part of their homestead under the Oklahoma law.

In April, 1904, Phillip Garret, while a single man, leased it without any reservations as to occupancy for cash rent for a period of five years, paid in a lump sum; in February, 1905, he and Stella Jones married, and, since this 40 acres of land was leased without reservations, they had no right of occupancy in the premises while the lease was in force and the lessee was in possession, and they derived no income from it prior to statehood. The testimony of Phillip and Stella as to living on the land after their marriage and other material issues involved was of a very doubtful quality. He admitted he gave the lease in 1904, and yet he testifies that when he and Stella were living on the land in 1905, there was no lease on it. However, it is immaterial as to whether they lived on it or did not live on it, since it was under lease and in possession of the lessee without any reservations. It is very doubtful from the testimony of Phillip and Stella as to when they separated, whether in April, 1907, or in 1908. The record of her divorce action contradicts their testimony that the separation did not take place until 1908. The ground for divorce was desertion and the desertion had to be for 12 months before the action accrued and her petition was filed October 1. 1908. The suit was abandoned, but the affidavits and record are not contradicted or explained except by the bare denial of Stella. Phillip's affidavit, made five days after the deed was given to the 40 acres of

land, to the effect that he had lived on the land since 1905, and that they had occupied Stella's 40 acres and claimed it as their homestead and did not claim his 40 acres as a homestead, and the deed he gave to Getzendaner and the deed he gave to Barker about the same time, and the further fact that they waited many years before taking any steps to cancel the deeds and recover the land, and did not bring this action till October 14, 1920, are all inconsistent with the claim that the land was ever selected as a homestead or as a part of a homestead, and the court's finding on the question involved is not against the weight of the evidence.

We are, therefore, of the opinion that the judgment should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 528 (1926 Anno). (2) 29 C. J. pp. 801, 809 (1926 Anno). (3) 4 C. J. p. 884. (4) 29 C. J. pp. 830, 831. (5) 29 C. J. p. 821 (1926 Anno).