## CLAY et al. v. BROWN.

No. 20909. Opinion Filed May 24, 1932.

Withdrawn, Corrected, and Refiled June 7, 1932.

Rehearing Denied Jan. 7, 1933.

Brett & Brett and Thos. Norman, for plaintiffs in error.

J. E. Williams, for defendant in error.

KORNEGAY, J. This is a proceeding in error to review the action of the district court of Carter county in case No. 16247, Minnie Brown, Plaintiff, v. J. E. McCarty and C. W. Clay, Defendants. That cause resulted in a judgment on a promissory note against the defendants and a levy by the sheriff upon the northeast quarter of section 28, township 5 south, range 1 east, the property of the defendant Clay, the party here complaining, his complaint being that it was his homestead, and the matter coming up on motion to quash the levy, on which testimony was taken and the court refused the motion to quash the levy, followed by motion for new trial and proceedings here.

During the pendency of the proceedings here, both parties died, and the cause has been revived in the names of R. H. Brett, administrator of C. W. Clay, and Martin D. Brown, administrator of Minnie E. Brown. The parties are designated herein as in the case-made and briefs.

The question here, and with the court below, is whether or not the showing made left the property subject to execution upon the judgment upon the note sued on. The property was appraised, it being mortgaged, and the value of the equity was fixed at $6,272.10. The claimant averred that he was merely surety on the notes, and that the property was his homestead and it was the only one he had or claimed, and it was exempt from levy.

Testimony was taken of the claimant, C. W. Clay, and also of J. G. Chancellor and J. P. Raines, on behalf of the claimant, and on behalf of the execution creditor the testimony of R. E. Holliman, the deputy court clerk, and J. T. Evans, the deputy county assessor, and of J. E. Williams, the attorney for the plaintiff in the execution, and also the execution plaintiff. The testimony of the witnesses for the claimant established clearly that the claimant had bought the property for a home in the year 1921, and that he had continually improved it since then and had farmed it, and from time to time had made declarations as to its being his home, and had stated as early as 1922 that he wanted to be buried there under a weeping limb, and he had improved it a great deal, and had always maintained a room on the farm occupied with his furniture, and kept his live stock there, sometimes operating with a hired hand and sometimes having a tenant, and having leased it for oil development.

In opposition to this it was shown that he had voted in Ardmore in the general

elections, the farm being about nine miles from Ardmore, and it also appeared that he had voted at the school elections at the farm. It further appeared that his wife was not mentally sound and did not want to live on the farm with him, but that he had used the farm for the purpose of supporting her and himself, he staying part of the time in Ardmore and part of the time on the farm, but at all times maintaining his furniture there, which he used when there. His testimony in that regard was substantiated by Chancellor and by Raines.

When the registration law was passed, he registered at Ardmore and never changed his registration. It is claimed in the reply brief of the plaintiff in error, in the conclusion of the brief, as follows:

"And again we state, it is apparent that the trial court's judgment is predicated on a misconception of the law. The facts are undisputed and there are no facts that support the judgment of the trial court under the law, and the law controlling under the undisputed facts does not sustain or support the judgment of the trial court. There were no controverted facts for the court to weigh, but only an application of the law to the uncontroverted facts, and in that duty, we respectfully submit, the court erred. And this court is not called upon to weigh any controverted evidence, but to apply the law to the undisputed facts and correct the misconception of the law upon which the trial court predicated his judgment. And a correct application of the law to the undisputed facts, we respectfully submit and earnestly maintain, will lead this court to reverse the judgment of the trial court, and render a judgment sustaining the homestead rights of C. W. Clay. And further directing the trial court to enter an order quashing the levy of execution levied thereon."

An inspection of the record convinces us that there was very little, if any, conflict in the testimony. The land was bought by the claimant for a home in the year 1921. He had at all times claimed it as such, and had practically lived on it and worked with it and used it for support. The fact that he voted in Ardmore, whether it was legal or illegal, and the fact of his having signed bonds stating what he was worth over and above his exemptions, in our judgment, would not prevent the positive facts of his having this property for a home and living on it and using it as such, being 160 acres in extent, from impressing it with the character of a homestead under the law, and his being entitled to hold it for that purpose.

The judgment was rendered on the 6th of August, 1928, and the levy was made December 7, 1928. At one time the claimant and his wife had owned a house in Ardmore that the wife occupied as a residence, but it had been sold in July, 1927, though the wife was still staying there, and if this uncontradicted evidence is true, there was no property belonging to the claimant that was occupied by him or claimed by him as a residence outside of the 160 acres here involved.

The solution of the question depends upon the Constitution of the state of Oklahoma. There have been various rulings on the subject of what was a homestead and from various angles have the courts approached it. Sometimes an oil lease was involved, sometimes a garnishment was involved, sometimes a sale without the wife's consent was involved, and a distinction has been made between a homestead classed as a federal proposition in dealing with the Indians and a homestead under the state Constitution. The state Constitution was framed by men part of whom were familiar with the homestead laws of Arkansas and part of them familiar with the territorial homestead, and evidently they had in mind the difference between the territorial homestead and the Arkansas homestead, and the federal homestead, as is apparent from the homestead provisions inserted in the Constitution. They are as follows:

"Article XII.

"Homestead and Exemptions.

"Section 1. The homestead of any family in this State, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town, or village. owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner; Provided, That the same shall not exceed in value the sum of five thousand dollars, and in no event shall the homestead be reduced to less than one-quarter of an acre. without regard to value: And Provided Further, That in case said homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of five thousand dollars: Provided. That nothing in the laws of the United States, or any treaties with the Indian Tribes in the State, shall deprive any Indian or other allottee of the benefit of the homestead and exemption laws of the State: And Provided Further. That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired.

"Sec. 2. The homestead of the family shall be. and is hereby protected from forced sale for the payment of debts, ex-

cept for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; Provided, Nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage.

"Sec. 3 After the adoption of this Constitution, paragraph three of section four, and section five, of Chapter thirty-four, Statutes of Oklahoma, of 1893, shall be inoperative: Provided, That no property shall be exempt for any part of the purchase price while the same or any part thereof remains in the possession of the original vendee, or in possession of any purchaser from such vendee, with notice: And Provided Further, Nothing in this Constitution shall prevent or prohibit any person from mortgaging or encumbering his personal exemptions.

"The Legislature may change or amend the terms of this article."

It will be observed by reference to the Revised Laws of Oklahoma, 1910, section 3343, that this provision in the Constitution is a change in and an adaptation of section 2861, Statutes of 1890, as follows:

"2861 Sec. 2. The 'homestead' of a family not in a town or city, shall consist of not more than one hundred and sixty acres of land which shall be in one tract or parcel with the improvements thereon. The homestead in a city, town or village, consisting of a lot or lots, not to exceed one acre with improvements thereon: Provided, That the same shall be used for the purpose of a home for the family: Provided, also, That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired: Provided, however, That eighty acres of the homestead upon which the dwelling house is located shall not be subject to mortgage and any mortgage either legal or equitable which does not leave unincumbered eighty acres according to United States survey containing the dwelling house shall be null and void except for the excess of said eighty acres, and any conveyance of said eighty acres absolute on its face the grantor remaining in actual possession of said eighty acres so conveyed may be shown by parol testimony to have been given for security, and when so shown shall be deemed a mortgage. The exemption herein provided for must not be construed to apply to the following persons, namely:

"First. To a corporation for profit.

"Second. To a nonresident.

"Third. To a debtor who is in the act of removing his family from the Territory; or,

"Fourth. Who has absconded, taking with him his family."

The chapter referred to in section 3 of the constitutional provision on the subject of homestead is in part as follows:

"(2845) Sec. 2. The homestead of a family not in a town or city shall consist of not more than one hundred and sixty acres of land, which shall be in one tract or parcel with the improvements thereon. The homestead in a city, town, or village, consisting of a lot or lots, not to exceed one acre with the improvements thereon; Provided, That the same shall be used for the purpose of a home for the family. Provided also, That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired; Provided, however, That nothing in this act shall prohibit any person from mortgaging his or her homestead. The exemption herein provided for must not be construed to apply to the following persons, namely:

"First. To a corporation for profit.

"Second. To a nonresident.

"Third. To a debtor who is in the act of removing his family from the Territory; or,

"Fourth. Who has absconded, taking with him his family."

"(2847) Sec. 4. The exemption of the homestead provided for in this act shall not apply where the debt is due:

"First. For the purchase money of such homestead or a part of such purchase money.

"Second. For taxes due thereon.

"Third. For work and material used in constructing improvements thereon, or for mortgaged indebtedness; but in this last case such work and material or mortgaged indebtedness must have been contracted for in writing, and the consent of the wife, if there be one, must have been given in the same manner as is by law required in making a sale and conveyance of the homestead."

Section 2, as it appeared before the amendment, is section 2861 of the 1890 statutes, set out above.

From this it will appear that the provision in the Oklahoma Constitution was just a remodeling of the statutory law of the territory of Oklahoma. When one figures that section 2 of chapter 34 is modified in the Constitution of Oklahoma so that the rural homestead could be made up of two or more parcels and could be taken regardless of any improvements, with provisions to cover the Indian homestead, it is clear that radical changes in the elements that should go to make the rural homestead

under the territorial law are made by the Constitution.

Under the old law, the 160 acres of land had to be in one parcel, and apparently it was in contemplation under the old law that the land should be improved. The idea of selecting is carried in the Constitution, which apparently was not in the original law. The time or the manner of the selection is not provided for in the Constitution or by positive statute. By reference to the statutes of the various states on the subject of homestead and exemption, one will find that the variation runs along the line of number.

Since statehood, we have had a great many decisions on the application of the homestead law, but there runs through all the decisions the idea of liberality in favor of the claimant, who sees old age coming on and needs support. At times it looks as though the law varied according to the particular case that was in hand, and the particular subject-matter, but, on the whole, liberality appears to be the standard that our court has set. Among other cases that have been called to our attention upon that line, an illustrative one is State ex rel. Freeling, Atty. Gen., v. Brown et al., 92 Okla. 137, 218 P. 816. The syllabus in that case is as follows:

"1. The exemption laws of this state are to be liberally construed in favor of the exemption.

"2. The exemption of the homestead of the family, provided in article 12 of the Constitution, extends to the proceeds of a voluntary sale of such homestead which are in good faith intended, at the time of such sale, to be invested in another homestead, and such proceeds are exempt from seizure by process of garnishment for debts not within the exceptions provided in article 12 of the Constitution.

"3. Where the head of a family in this state is the owner of one or more tracts of lands, not within any city, town, or village, consisting, in the aggregate of not to exceed 160 acres, the fact of ownership alone is not sufficient to constitute it a homestead, but where preparation is made to occupy the same as a homestead, or where an intention is evinced to so occupy it, within a reasonable time, it becomes impressed with the homestead character and is exempt, as such. and the proceeds derived from the sale of it, for the purpose of reinvesting in a homestead, are likewise exempt."

The body of the opinion appears to sustain the syllabus. We have extended our homestead law so far that we have kept creditors from garnishment proceedings of the homestead, and we have gone to the length of saying that intention accompanied by acts is sufficient in some cases.

As applied to the present case, there was actual occupancy and claim by the plaintiff in error of this 160 acres of land from the time of the purchase and acquisition. It was practically undenied that he had bought it for that purpose. The evidence in the case was conclusive that he had no other homestead that he claimed. The bare fact of his having voted elsewhere, in our opinion, would not destroy the facts of his home. It is not necessary to decide here at what particular time or in what particular manner the selection shall be, as occupancy and claim appear at the time of the rendition of the judgment· as well as at the time of the levy.

Under the evidence in this case, we can see no reason why the plaintiff in error was not allowed to claim the 160 acres of land as being exempt from the process in this case. The cause is reversed, with directions to the lower court to make an order quashing the levy of the execution upon the 160 acres of land involved. The cost of the proceeding will be taxed to the defendant in error.

HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and RILEY, J., absent.