## ORWIG v. CLOUD et al.

No. 15242—Opinion Filed Feb. 24, 1925.

**1. Homestead—Acreage of Rural Homestead —Family Use.**

Where the head of the family owns but 120 acres of land and resides on a portion of it, such facts do not make the entire tract the homestead, whether it be the one tract or separate portions; but only such part will be held to be a homestead as is intended by the owner as a part of his homestead and is used in connection with his place of residence for the comfort and sustenance of the family, or such part as the owner evinces by overt act, an intention to immediately use as a part of such homestead.

**2. Same—Homestead Character a Question of Fact.**

The question as to whether a tract of land has been selected and impressed with the homestead character is for the court or jury to determine under all of the facts and circumstances of the particular case.

**3. Appeal and Error—Question of Fact— Homestead Character of Land.**

Where such question is submitted to the court without a jury, a general finding in favor of one party will be given the same weight as the verdict by a jury, and if there is evidence reasonably tending to support the same, it will not be disturbed on appeal.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Seminole County; Hal Johnson, Assigned Judge.

Action by John M. Cloud et al. against S. S. Orwig to cancel a mineral deed and quiet title. Judgment for plaintiff, and defendant appeals. Affirmed.

S. S. Orwig, J. W. Wilmott, and R. J. Roberts, for plaintiff in error.

Hart & Banta, for defendants in error.

Opinion by FOSTER, C. In this case the defendants in error, as plaintiffs, recovered

a judgment in the district court of Seminole county against the plaintiff in error, as defendant, cancelling a certain mineral deed held by the defendant upon 40 acres of land in Seminole county and quieting the title thereto as against the defendant in said action.

The parties will be hereinafter referred to as they appeared in the trial court.

It appears that the land in controversy was a part of the surplus allotment of William Wolf, a full-blood Seminole Indian, and that the restriction upon the alienation of said lands had been unconditionally removed by the Secretary of the Interior on the 21st day of June, 1922, effective 30 days thereafter.

It appears also that on the date the order removing restrictions became effective and for some two years prior thereto, William Wolf and Jennie Wolf were husband and wife and this relationship subsisted at the time the various deeds hereinafter mentioned were executed.

On the 27th day of July, 1922, the said William Wolf executed and delivered to the plaintiff John M. Cloud a deed conveying 40 acres of his surplus allotment in which the wife of William Wolf did not join.

On the 28th day of July, 1922, a mineral deed was executed by William Wolf to the defendant S. S. Orwig in which he was joined by his wife, Jennie Wolf. On August 5, 1922, a joint deed by both William Wolf and Jennie Wolf, his wife, was executed and delivered to W. I. Davis, who thereafter and on the 26th day of August, 1922, by a quitclaim deed, conveyed all of his interest to the plaintiff John M. Cloud.

The only disputed question of fact in the case was whether or not the land in controversy was owned and occupied by the plaintiffs, William Wolf and Jennie Wolf, as a homestead on the 27th day of July, 1922, when the Cloud deed was executed.

A jury was waived and the cause was tried to the court.

The trial court found in favor of the plaintiff Cloud, upon this issue, finding that the real estate in controversy was not the homestead of William Wolf on the 27th day of July, 1922, and holding that the deed executed by him on that date passed the title without being joined therein by his wife; canceled the mineral deed held by the defendant as a cloud upon the title, and entered judgment quieting Cloud's title thereto.

Motion for a new trial was filed by the defendant, overruled, exceptions reserved, and the matter comes on regularly for hearing in this court on appeal by the defendant.

Two propositions are discussed by the defendant in his brief as grounds for reversal, which are as follows: First, "William Wolf and Jennie Wolf were not proper parties plaintiff. Second, The land in controversy was the homestead of William Wolf."

We shall consider these propositions in their order.

The record discloses that the trial court in its judgment found that William Wolf and Jennie Wolf were not proper parties plaintiff and sustained a motion by the defendant to strike their names from the petition.

In view of the fact that the plaintiffs took no exception to the action of the court in striking the Wolfs from the petition of the plaintiffs and in holding that they were not necessary parties, the question of whether or not William Wolf and Jennie Wolf were necessary parties plaintiff is not before this court for decision.

The trial court found that they had no interest in the subject-matter of the litigation, and disposed of the case as a controversy solely between plaintiff Cloud and the defendant Orwig.

Since the plaintiff does not complain and since the defendant Orwig has been sustained in this particular, there is no cause for complaint by the defendant unless it can be said that the defendant was prevented from having a fair trial, on account of a failure by the court to strike their names from the petition when the motion was first interposed before the trial.

It is not shown that the judge who tried the case had the question of a defect of parties brought to his attention until after the testimony was all in, at which time the motion of the defendant was sustained, striking the Wolfs from the petition as unnecessary parties.

The first motion was overruled by a different judge from the one trying the case.

It is insisted that if Wolf and wife had not appeared as parties, their testimony might have been different. This presumption, however, cannot be indulged.

There is no specific proof of undue influence exerted, and the mere fact that they were improperly joined as parties would not justify a presumption that they colored their testimony, and that as a result the

defendant was prevented from having a fair trial.

It is contended that the land in controversy was the homestead of William Wolf and the deed to J. M. Cloud was therefore void because his wife did not join therein.

The evidence discloses that William Wolf received from the Seminole Tribe of Indians an allotment of 120 acres. The evidence further discloses that the 40 acres in controversy was a part of the surplus 80 allotted to William, and that for a period of some ten years prior to the deed to Cloud, had been occupied by a tenant; that when the 40 in controversy was first rented, William himself was a minor, and at no time thereafter until the deed to Cloud was executed was it occupied either by William or his father, except as lessors.

The allotted homestead of William seems to have been occupied and farmed during this time by Jackson Wolf and by William Wolf after his marriage, during which time William and his father resided together in the house built by the father during William's minority on the allotted homestead.

The evidence discloses also that William and his father cut fire wood from the 40 acres in controversy to supply the home with fuel, and that it had been customary during the entire time the 40 acres of land had been rented to graze live stock thereon together with other grazing land surrounding it.

Conflicting statements of William himself were admitted as to what his intentions were respecting the use of the 40 acres in controversy as a homestead.

Not only did these statements conflict when made to the litigating parties prior to the trial, but his own testimony was in conflict in this particular at the trial.

In view of these conflicting statements, the expressed intention of William respecting the use and occupation of the land in controversy as a homestead becomes of doubtful value.

The claim made by the defendant of the homestead character of the 40 acres in dispute is rested mainly upon the proposition that William Wolf cut fire wood from it and used it as fuel in the home, and that it therefore became impressed with the character of a homestead by reason of the use so made of it.

There being positive evidence that the land in controversy had always been occupied by a tenant and had never been occupied and used as a home, the judgment and finding of the trial court is amply supported by the evidence in the case and will not be set aside as contrary thereto merely because it is shown that the owner cut fire wood and grazed stock on the disputed premises at different times by permission of the tenant.

It is true that the temporary renting of the homestead will not destroy its homestead character but in this case there had been nothing done by which the land could be impressed with the character of a homestead prior to the date it was rented.

This finding and conclusion by the trial court is strengthened, we think, by the further fact that William Wolf never, at any time, established an exclusive residence upon any part of his allotment, but simply shared the home established by his father upon his allotted homestead.

Mere ownership by the head of the family of land, not exceeding 160 acres, does not, as a matter of law, operate to make such land a rural homestead. It is the actual use and occupancy by the head of the family of such land as a home for himself and family that is protected by the Constitution and laws of this state requiring the joint execution of the deed thereto by both husband and wife. McCray v. Miller, 78 Okla. 16, 184 Pac. 781.

In Kerns et al. v. Warden et ux., 88 Okla 297, 213 Pac. 70, it is said:

"Where the head of the family owns but 130 acres of land and resides on a portion of it, such facts do not constitute the entire tract a homestead, whether it be in one tract or separate parcels; but only such part will be held to be a homestead as is intended by the owner as a part of his homestead, and is used in connection with his place of residence for the comfort and sustenance of the family, and is occupied and cultivated in common, or such part as the owner evinces by overt acts an intention to immediately use as part of such homestead."

And the burden of making proof of the necessary ingredients of a statutory homestead is upon the person asserting the existence of such homestead. Merritt et al. v. Park National Bank of Sulphur, 77 Okla. 148, 187 Pac. 232.

The question as to whether a tract of land has been selected and impressed with the homestead character is a question of fact for the court or jury to determine under the facts and the circumstances of the

particular case. Kerns et al. v. Warden et ux., 88 Okla. 297, 213 Pac. 70.

There being evidence introduced, which under rules of law applicable to the case, reasonably tended to support the finding and judgment of the trial court, it will not be disturbed by this court on appeal.

In J. B. Edgar Grain Co. v. Kolp, 48 Okla. 92, 149 Pac. 1096, it is said:

"Where a case is tried to the court without a jury, a general finding in favor of one of the parties will be given the same weight as a verdict of the jury and if there is evidence reasonably tending to support the same it will not be disturbed upon appeal." See, also, Brock v. Williams, 16 Okla. 124, 82 Pac. 922; Provens v. Ryan, 57 Okla. 175, 156 Pac. 351.

Upon a survey of the entire record, we are of the opinion that the judgment of the trial court is correct and should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 29 C. J. p. 823; (2) 29 C. J. p. 991; (3) 4 C. J. p. 879.