## HICKOK v. KENNEDY et vir.

No. 26065.   March 17, 1936.

Rehearing Denied June 30, 1936.

Martin & Spradling, for plaintiff in error.

Biddison, Campbell & Biddison and Spielman, Cantrell & McCloud, for defendants in error.

PHELPS, J. This is an action by a widow for the recovery of a city lot, formerly conveyed by her husband, now deceased, to the defendant, his niece. The theory of the action is that the deed is void because it conveyed a portion of the homestead of the parties, without the wife's signature. With the exception of a small part of the rear end of the lot the trial court held for the defendant and her codefendant husband, and plaintiff appeals. The case turns upon determination of whether the lot was a portion of the homestead at the time of the conveyance.

In 1920 Ansel Hickok bought what is now block 8 of Cherokee Heights second addition to the city of Tulsa. He was the sole grantee in the deed, and title at all times was in his name only. The block was not at that time a part of the city of Tulsa. Ansel Hickok and his wife moved into a house on the premises and lived there until his death, subsequent to all of the events herein narrated.

The city grew up around three sides of the block and in 1923 it was by ordinance included within the city limits. From that time on, the evidence reveals a course of conduct by Ansel Hickok and his wife indicating a plan to construct dwellings and convert into residence property the entire east side of the block. On July 2, 1925, Ansel Hickok, with her knowledge but without being joined by his wife, conveyed to the city of Tulsa by warranty deed a strip off the east side of the block, 20 feet wide; this was for the purpose of forming a street, which was later paved. On September 8, 1927, Hickok and his wife conveyed by deed to D. P. and Mabel Jones a lot in the northeast corner of the block, but failing to pay the purchase price, the grantees later conveyed this lot back to the Hickoks. On January 26, 1928, Ansel Hickok conveyed the southeast corner of the lot to his sister-in-law Maggie H. Hickok. Neither was this deed signed by the wife. On November 26, 1930, Hickok conveyed another lot on the east side, parallel to the Jones and Maggie Hickok lots, to his niece, Margaret H. Kennedy, defendant and defendant in error in this action. This deed was not signed by the wife, plaintiff and plaintiff in error. On November 28, 1930, Hickok conveyed another lot on the east side to another niece, Frances Marie Cowart, in which deed his wife did not join. Frances Marie Cowart and her husband were defendants in a companion case filed by the widow to recover that lot, and that action was consolidated for trial with the present action.

The two houses on the two lots which are the subject of these actions were built by Hickok in 1925, two years after the block was brought within the city limits, and five years before he conveyed those lots to the defendants, during which time they were rented out by Hickok with the consent and acquiescence of his wife. At no time were these houses ever used personally by Hickok or his wife for residence purposes or for any other purpose. After his death on June 22, 1931, they were not included in the inventory and appraisement nor within the inheritance tax, nor in the final decree of distribution. Exclusive of these lots, and inclusive of the portions thereof awarded plaintiff by the trial court, and the Jones lot mentioned above, and of the residence retained, the plaintiff now has remaining in her name an area of 47,010.55 square feet, which is 3,450.55 square feet in excess of one acre. If we should exclude the Jones lot, the title to which is in plaintiff's name, the area remaining would be 2,629.45 square

feet less than an acre. However, as will be seen below, the case does not turn on this point.

Under our constitutional and statutory provisions in this state (Const. art. 12, sec. 2, St. 1931, sec. 9661), a conveyance of the homestead by either spouse, not joined in by the other spouse, is void. The pivotal question, then, in this case, is whether the two lots were a part of the homestead at the time they were conveyed, in November of 1930.

In arguing this question the parties devote much space to discussion of whether the inclusion of the block within the city limits in 1923 reduced the homestead area from that of a rural homestead to that of an urban homestead, and whether such homestead is therefore to be measured and controlled by the law applicable to homestead: within an incorporated city, town or village. Sections 1 and 2 of article 12 of our Constitution prescribe that a rural homestead shall consist of not more than 160 acres and that an urban homestead, owned and occupied as a residence only, shall consist of not to exceed one acre of land, provided that it shall not exceed in value the sum of $5,000, and that it is in no event to be reduced to less than one-fourth of an acre without regard to value, and that if it is used for both residence and business purposes, the homestead interest shall not exceed in value the sum of $5,000; and further, that said homestead is protected from forced sale for the payment of debts (with certain exceptions) and that the owner, if married, shall not sell the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. Thus the parties argue: The plaintiff to the effect that she obtained a vested homestead right in the entire block prior to its inclusion in the city of Tulsa and that therefore it was beyond the power of that municipality to reduce her homestead rights to one acre or less. the defendant to the effect that the transition of the property from rural to urban identity reduced the homestead area to one acre or less, and that since the judgment leaves the plaintiff with approximately one acre remaining, her homestead rights have not been infringed upon.

In our opinion all of this argument is beside the real point in the case. The character of use of the property conveyed, rather than the size of the retained area, is really the decisive factor. Because the Constitution and statutes prescribe certain maximum and minimum areas (and maximum value, in the case of urban homesteads) it was not thereby meant that whether the property is homestead is to be determined for all purposes by those tests. A city dweller may own an acre, a part of which is homestead and a part of which is not, or it may all be homestead, or he may own less than an acre and none of it be homestead, depending upon the facts of the case and the particular question being considered. If Ansel Hickok and the plaintiff so treated and used the particular property in question as to impress it with a homestead character, then it is their homestead for the present purpose, and if they did not do so, then it is not their homestead, and this is true regardless of whether it was in the city or the country. The trial court's conclusion that these lots were not treated, used, or considered by either Hickok or his wife as homestead property finds ample support in the evidence. Beginning with the incorporation of the block within the city limits, and extending over a period of five years up to the date of the deeds, every act of the parties is strongly inferential of an intention and purpose to convert the entire east side of the block into ordinary city property, some of it rental, and there is no point in evidence indicating any intention in either of them to save, occupy or use any of the lots or houses which they built on that side of the block for any purpose even remotely consistent with the idea of establishing a residence there or in connection with their own residence of an estimated $16,000 value In the beginning a conveyance was made to the city of Tulsa along the entire east side of the block. Plaintiff did not join in that deed, but has never questioned it. Neither, apparently, has she questioned the validity of the deed by Hickok only to Maggie Hickok. Following conveyance of this strip along the entire east side, houses were built and rented for a period of five years. During that time neither Hickok nor the plaintiff had any dominion thereover except as landlord.

Regardless of whether property is within or beyond the limitations as to quantity and value of homestead, it cannot be considered as homestead for the purpose herein being considered unless it is impressed with the quality and characteristics of homestead. There is no magic or obscurity in the meaning of the word; its popular significance and its statutory and constitutional import are the same: It simply means the residence of

the family, the place where the home is (Preston v. Ottawa County Nat. Bank, 138 Okla. 133, 280 P. 581), and of course this definition does not restrict the homestead to the actual dwelling, but it also includes those portions of the land upon which the dwelling is situated which are devoted to and used for purposes reasonably appurtenant to the urban dwelling, as a home place. The fact that one may own an acre of land within a city, or more, or less, does not of itself transform the entire tract or any part thereof into a homestead, unless the other attributes of a homestead are present. As to the east side of the block, on which is located the property in suit, all of the evidence negatives the idea of homestead use, and affirms the conception of nonhomestead use. Though no special finding to this effect was made by the trial court, it is manifest that without such conclusion the court would not have arrived at the decision appealed from, and we are not inclined to believe that the court predicated its findings solely on the question of area, as discussed so extensively by the parties.

Preston v. Ottawa County Nat. Bank, supra, was a case wherein we considered this same question. Preston owned a house in which he and his wife lived for about a month. In the meantime they purchased another dwelling contiguous thereto, situated just across an alley. They moved into the latter house and lived there a number of years, during which time they rented the house in which they had first lived, and during that time they kept a part of their personal property stored in a small storage house located on the same lot as the house from which they had moved. During this time the wife expressed an intention to move back into the first house, and did move some more furniture, etc., to the storage house located in the rear thereof. While the wife was visiting in Indiana the husband mortgaged that house and lot, in which mortgage she did not join. When she returned they moved back into the house. In spite of these facts, we held that, inasmuch as that house was not being used for residence or homestead purposes by the Prestons when he mortgaged it, the mortgage was not invalid for want of her signature. It is unnecessary to quote from the case: it is sufficient to observe that it illustrates the necessity of homestead use to homestead identity. See, also, Johnson v. Johnson, 82 Okla. 259, 200 P. 204; Watson v. Manning, 56 Okla. 295, 156 P. 184; Bouse et al. v. Stone et al., 65 Okla. 5, 162 P. 479; McCray v. Miller et al., 78 Okla.

16, 184 P. 781; Greenwood v. Wilkinson, 124 Okla. 300, 256 P. 46.

It being manifest that the acts and conduct of both Hickok and his wife, the plaintiff, multiplied over a period of five years, evidence more strongly the absence of homestead use and characteristics than the presence thereof, the judgment of the trial court in this respect was fully warranted, and is not against the clear weight of the evidence.

The case of In re Gardner's Estate, 122 Okla. 26, 250 P. 490, cited by plaintiff, illustrates the fact that the extent of the homesead **exemption** may be an entirely different question from that of what the homestead is, for the purpose of the survivor's right of occupancy. The case appears almost silent on the question of whether there was an intent to occupy the apartment house as a residence, the parties having lived in a smaller house in the rear thereof, on the same lot. The question in that case was the right of selection of a homestead, after the death of the husband. In the instant case the question is whether the property in suit was homestead **in character** at the time of the conveyance, prior to the husband's death. The remarks in the Gardner Case to the effect that the survivor may occupy the "whole homestead" do not mean that the entire property in deceased's name is necessarily homestead. The widow in the instant case, for that matter, may occupy the "whole homestead," or any house thereon, which merely brings us back to the starting point, namely, whether the property in suit was in fact homestead. Having reached the conclusion that the judgment of the trial court must be sustained upon this question and that the other assignments of error are without merit, the judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J , and BUSBY, CORN, and GIBSON, JJ., concur.