**In re Jack Alvin SHIELDS, Sr., Debtor.**

**Bankruptcy No. 87–02807.**

United States Bankruptcy Court, N.D. Oklahoma.

April 15, 1988.

Gary W. Wood, Tulsa, Okla., for debtor.

Patrick J. Malloy, III, Tulsa, Okla., trustee.

## ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

MICKEY DAN WILSON, Bankruptcy Judge.

On October 9, 1987, Jack Alvin Shields, Sr. ("Debtor") filed his petition for relief under 11 U.S.C. Chapter 7 with attachments and schedules including Schedule B-4 listing property claimed as exempt pursuant to 11 U.S.C. § 522(*l*). On December 3, 1987, Patrick J. Malloy, III, Trustee of Debtor's bankruptcy estate ("Trustee"), filed his "Objection to Claimed Exemptions," objecting to Debtor's claimed exemptions of homestead, wages, and tools of Debtor's trade. Hearing was set for December 29, 1987; at said hearing, it was determined that the matter would be submitted for decision on stipulations. On January 27, 1988, Debtor amended his Schedules B-2 and B-4. On March 1, 1988, the Trustee and Debtor by his attorney, Gary Wood, filed their joint "Stipulation of Facts." According to the "Stipulations," the Trustee withdraws his objection as to wages and tools of trade; but the objection as to homestead remains to be decided according to the stipulated facts. Upon consideration thereof, the Court finds, concludes, and orders as follows:

Debtor is joint owner with his wife of real property which is the subject of this contested matter. The realty consists of two tracts of land, "contiguous" but effectively separated by a county roadway, Stips. Par. 2. A plan of the property provided by the parties in their "Stipulations" is attached hereto as Exhibit A. The two tracts total roughly 1.9 acres, and are not within any city, town or village. On the land are several structures: a house wherein Debtor and his wife reside; another building lying athwart the county roadway; and three trailers occupied by Debtor's children and their families. The building lying athwart the county roadway "was a carport which had walls and doors added but no floor," Stips. Par. 5; was "utilized by the Debtor as an office as late as three months" before Debtor filed his petition in bankruptcy, Stips. Par. 4(c); and "was being used for family purposes and not for business" when Debtor filed his petition in bankruptcy, Stips. Par. 6. Since the carport lies athwart the county roadway, "if the County requested the building would have to be removed," Stips. Par. 6. Debtor's one-half interest in the entire realty is valued at $35,000.00 on Debtor's Schedules B-1 and B-4. "The parties agree that the Court may resolve all questions relative to the legitimacy of the Debtor's claim for homestead exemption based upon these stipulated facts alone," Stips. Par. 8.

 Debtor may claim exemptions from his bankruptcy estate under Oklahoma law applicable on the date Debtor filed his bankruptcy petition, 11 U.S.C. § 522(b)(2)(A), 31 O.S.A. § 1(*b*).

Oklahoma Constitution, Art. XII §§ 1-3 establishes Oklahoma's basic homestead right. According to § 1,

"The homestead of any family in this State, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner. The homestead within any city, town, or village, owned and occupied as a residence only, shall consist of not exceeding one acre of land, to be selected by the owner: Provided, That the same shall not exceed in value the sum of five thousand dollars, and in no event shall the homestead be reduced to less than one-quarter of an acre, without regard to value; And Provided Further, That in case said homestead is used for both residence and business purposes, the homestead interest therein shall not exceed in value the sum of five thousand dollars: Provided ... That any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

This is referred to herein as the *constitutional homestead.*

31 O.S.A.Supp. 1987 § 1(A) "reserve[s] to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the pay-

ment of debts ... 1. The home of such person, provided that such home is the principal residence of such person." This provision is apparently meant to be read in conjunction with 31 O.S.A.Supp. 1987 § 2 which defines "homestead" in terms similar to the constitutional homestead but extends the right to single adults and not just heads of families. These statutory provisions establish an exemption against creditors which is referred to herein as the *debtor homestead.* 58 O.S.A. § 311 provides for occupancy of a decedent's homestead by surviving spouse and/or minor children. This statute does not define "homestead," and courts have read into the term the elements of the constitutional and debtor homesteads, *In re Carothers' Estate,* 196 Okl. 640, 167 P.2d 899, (Okla. 1946). This is referred to herein as the *probate homestead.* It is said that the policies behind the debtor and probate homesteads are different, *Mercer v. Mercer,* 365 P.2d 554, 556 (Okla.1961); *Ringer v. Byrne,* 183 Okl. 46, 80 P.2d 212 (Okla. 1938); *In re Estate of Gardner: Bowers v. Gardner,* 122 Okl. 26, 250 P. 490 (Okla. 1926) but the constitutional, debtor and probate homesteads use the same measure; so for purposes of determining what property is exemptable as homestead, cases concerning debtor and probate homesteads are interchangeable.

The Oklahoma constitutional and statutory provisions mentioned above establish two basic standards for measuring what property is exemptable as homestead, depending on the situs of the property, as follows: (1) homestead "not within any city, town, or village" hereinafter called *rural homestead;* and (2) homestead "within any city, town, or village" hereinafter called *urban homestead.* In the case of urban homesteads, and disregarding the special case of urban homestead used both for residential and business purposes, the Oklahoma Constitution and statutes prescribe maximum and minimum limits of exemptability—a maximum of one acre, a minimum of one-quarter acre. In the case of rural homesteads, the Oklahoma Constitution and statutes prescribe a maximum limit, i.e., 160 acres, but no minimum limit.

In the case now before this Court, the land claimed exempt is outside any city, town, or village, so that its exemptability must be determined under the rural homestead standards; and totals just under 2 acres, so that it remains well within the maximum limit of the rural homestead. If Debtor is entitled to exempt any rural land he selects up to 160 acres, Debtor's claim of exemption herein must be granted *in toto* without further ado. But Debtor is not so entitled. Oklahoma courts have repeatedly refused to exempt rural land as homestead even though the total acreage claimed exempt was less than 160 acres. Regardless of acreage, rural land may be exempt only to the extent that it is impressed with the homestead character, i.e., is used for debtor's rural domestic purposes.

In *Elliott v. Bond,* 72 Okl. 3, 176 P. 242 (Okla.1918), it was held that, where one owning 180 acres not within any city, town, or village and whose family home was on some part of that land, "impressed" such land "with the homestead character," the owner may exempt up to 160 acres of it as homestead "whenever the necessity for making such selection might arise, provided such selection included the residence or home of the family and was not manifestly made in disregard of the rights of others," *id.,* 72 Okl. at p. 5, 176 P. 242. This double rule, of "homestead character ... not manifestly made in disregard of the rights of others," may be regarded as basic.

In *McCray v. Miller,* 78 Okl. 16, 184 P. 781 (Okla.1919), it was held that residence or intended residence on land was necessary to support a claim of exemption: on the authority of *Elliott v. Bond,* supra, "homestead" must have "a homestead character," and residence or bona fide intention to take up residence was a necessary element of "homestead character." Later decisions concerning rural homestead claims discovered other necessary elements of "homestead character." Residence alone was not sufficient; a particular *use* was necessary to "impress the homestead character" and permit exemption; and in-

appropriate use prevented exemption, even of tracts smaller than 160 acres.

The leading case is *Kerns v. Warden,* 88 Okl. 297, 213 P. 70 (Okla.1923). Plaintiff sued to recover a 30–acre tract which plaintiff had deeded to defendant, on grounds that the 30–acre tract was part of plaintiff's homestead, that plaintiff's spouse had not joined in the conveyance of homestead property, and that therefore such conveyance was void. Plaintiff claimed as homestead the 30–acre tract and a contiguous 100–acre tract separated from the former by a section line road. Plaintiff lived in a home on the 100–acre tract; there were no improvements on the 30–acre tract, but plaintiff alleged the 30–acre tract was cultivated along with the 100–acre tract. Defendant offered evidence that the 30–acre tract had never been cultivated or otherwise used as homestead property. The trial court sustained plaintiff's demurrer to defendant's evidence. The Oklahoma Supreme Court reversed, directing that trial be had on the question whether the 30–acre tract had been "impressed with the homestead character." Plaintiff's argument is not stated, but apparently rested on the proposition that plaintiff was entitled to a minimum of 160 acres (or as near that as he owned) regardless of the land's character and use, as a matter of law. The Supreme Court cited *McCray v. Miller,* supra, for the rule that "the land claimed as a homestead must have been impressed with the homestead character," *Kerns v. Warden,* supra, 213 P. p. 71. As to what constitutes "homestead character," the Court quoted with approval *Mullins v. Baker,* 193 Ala. 594, 69 So. 516 (1915), as follows:

> "To be exempt, the premises must be occupied in good faith as a home, rather than as a source of income. The right of homestead is conferred to protect the roof that shelters and the land actually used in connection therewith for the comfort and sustenance of the family, and cannot be converted into a shield of investments in lands from which rents and profits are to be derived,"

*Kerns v. Warden,* supra, 213 P. at p. 72. The Court also quoted with approval *Ashton v. Ingle,* 20 Kan. 670 (1878), in part as follows:

> "As to use and occupation, it must be used as the homestead of the owner, and must be occupied by his family as a residence or it will not be exempt. Any portion of his real estate not so used and occupied will not be exempt, whatever may be the extent or value of such real estate, great or small. But the law however does not use the words 'homestead,' and 'occupied' and 'residence' in any narrow or limited sense. The word 'homestead' does not include merely the dwelling house, but it also embraces everything connected therewith which may be used and is used for the more perfect enjoyment of the home, such as outhouses for servants, for stock, or property, gardens, yard, and farming land to the extent of 160 acres ... In order that anything shall be a part of the homestead, it must ... be used in connection therewith and as a part thereof,"

*Kerns v. Warden,* supra, 213 P. at p. 72. The Court then ruled that, under Oklahoma constitutional and statutory homestead provisions, as to any tract of land,

> "... [I]n order to constitute any portion of such tract a homestead, two requisites must concur as to such portion: (1) the owner must intend the property as a part of his homestead; and (2) he must in some way use it as such. Where the land owned does not exceed 160 acres and a portion thereof is not used in any way as a homestead, and where the owner does not evidence by overt acts an intention to immediately use the same as such, such portion of the 160 acres will not be considered a part of the homestead. As to whether such property is a homestead is a question of fact to be determined by the evidence,"

*id.,* and held that, since evidence was offered tending to show that the land in question "was never impressed with the homestead character," a question of fact was raised, "and it was error for the trial court to sustain a demurrer to defendants' evidence,", *id.,* 213 P. at p. 73.

In *Harris v. Watts*, 102 Okl. 36, 226 P. 40 (Okla.1924), the land claimed as homestead totaled only 80 acres in three separate parcels, one parcel being contested among various successors in interest of the original homesteader. This parcel "was not occupied or used in connection with the family's place of residence, for the comfort and sustenance of the family," *id.*, 226 P. at p. 41, and the trial court "found that the land in controversy was no part of the homestead," *id.*, at p. 40. Plaintiffs appealed; they argued

"... that the family was entitled to 160 acres of land as a homestead without regard to whether it had ever been impressed with the homestead character; in other words, that the homestead character attaches to property owned by the family to the extent of 160 acres of land without regard to its use."

*id.*, 226 P. at p. 41; and that the rule of *McCray v. Miller*, supra, and *Kerns v. Warden*, supra,

"... should be applied only to cases where the family owns more than 160 acres of land ... but should not be applied where the family owns 160 acres of land or less ... as the entire property in such circumstances constitutes the homestead without regard to the manner in which it is used,"

*id.* The Oklahoma Supreme Court rejected these claims, tersely observing that "the question involved here was discussed fully in Kerns v. Warden, supra, and the judgment of the trial court was in accordance with the views therein announced," *id.;* and affirmed the trial court's judgment.

In *Orwig v. Cloud*, 109 Okl. 299, 233 P. 1085 (Okla.1925), a dispute arose among various grantees of William Wolf, a Seminole Indian. Wolf received from his tribe an allotment of 120 acres, 80 acres of which he occupied himself and 40 acres of which he rented to a tenant. The rented 40 acres remained largely unimproved, and with permission of his tenant Wolf removed firewood for his home from the 40 acres and grazed stock on it. Plaintiff sought to quiet his title to a mineral deed on the 40 acres; defendants resisted on grounds that the land had been Wolf's homestead, and that the mineral deed to plaintiff was void because not joined in by Wolf's wife. The trial court found that the 40 acres was not part of Wolf's homestead. The Oklahoma Supreme Court affirmed. The rule, said the court, was that

"Mere ownership by the head of the family of land, not exceeding 160 acres, does not, as a matter of law, operate to make such land a rural homestead. It is the actual use and occupancy by the head of the family of such land as a home for himself and family that is protected by the constitution and laws of this state,"

*id.*, 233 P. at p. 1087, citing *McCray v. Miller*, supra, and *Kerns v. Warden*, supra. In the instant case,

"There being positive evidence that the land in controversy had always been occupied by a tenant, and had never been occupied and used as a home, the judgment and finding of the trial court is amply supported by the evidence in the case, and will not be set aside as contrary thereto merely because it is shown that the owner cut firewood and grazed stock on the disputed premises at different times by permission of the tenant,"

*Orwig v. Cloud*, supra, 233 P. at p. 1086. Thus, even agricultural use of rural land for domestic purposes did not impress such land with a homestead character where such use was merely incidental to an overriding non-homestead use—even though the homestead was thereby reduced to only 80 acres, half the statutory maximum.

Some further gloss on what makes "homestead character" was provided by *Morey v. James*, 136 Okl. 174, 276 P. 707 (Okla.1928), which described the appropriate use as "for agricultural purposes for the support and maintenance of [the homesteader] and family," *id.*, 276 P. at p. 707, and the land itself as "fertile and adapted to growing valuable staple crops," *id.*, at p. 708.

*Powell v. Powell*, 189 Okl. 255, 116 P.2d 889 (1941) is a probate-homestead case which explicitly adopts for probate purposes the homestead criteria pertaining to constitutional and debtor homesteads.

This decision also makes it quite clear that property used for business purposes, even where debtor's "business" is farming, is not exempt. Decedent and his wife owned two tracts of land, of 37 and 80 acres, respectively. They resided on the 37–acre tract, and leased the 80–acre tract to share-cropping tenants. Lessors used the income paid over to them by the sharecroppers for their own living expenses. After decedent's death, his wife sought to have both tracts of land declared her probate homestead. The County Court reserved for her only the 37–acre tract; the District Court affirmed, and the Oklahoma Supreme Court affirmed. Said the Supreme Court,

"Here, the evidence indicated that the income from the 80 acres, the unoccupied tract, was used for the benefit of the family. But that circumstance alone was not sufficient to indicate an intention on the part of the owner to select the 80 acres as part of the homestead. The burden was on plaintiff to show that said tract was used, not only for the benefit of the family, but also in connection with the 37 acres as a home place. There was nothing in the evidence bearing on the use of the 80 acres that would distinguish it from any other farmland lying separate and apart from the home place of the ordinary land owner. There was no evidence of a satisfactory nature to indicate that it was used in connection with the occupied tract as a home. The trial court was of that opinion, and its judgment was not against the clear weight of the evidence ..."

*id.*, 116 P.2d at pp. 890–891—even though the rural homestead was thereby reduced to 37 acres.

In *Hickok v. Kennedy*, 177 Okl. 334, 58 P.2d 1236 (Okla.1936), the Oklahoma Supreme Court affirmed a lower court's refusal to impress a probate homestead on land whose urban or rural character was in dispute. Ansel Hickok bought a block of land outside Tulsa's city limits. He lived in a house on that land until his death. In 1923, the block was annexed by the City of Tulsa. Later, Ansel conveyed various parts of the block to various parties who built their homes thereon. After Ansel's

death, his widow sued to recover the entire property originally bought and owned by Ansel, on grounds that it was homestead property and she had not joined in the various conveyances. The parties below argued the effect of the annexation by the City of Tulsa on the rural or urban nature of the homestead exemption. The Oklahoma Supreme Court found "all of this argument ... beside the real point in the case," *id.*, 58 P.2d at p. 1238, for the block was not homestead.

"... [T]he character of use of the property conveyed, rather than the size of the retained area, is really the decisive factor. Because the Constitution and Statutes ... prescribe certain maximum and minimum areas (and maximum value, in the case of urban homesteads), it was not thereby meant that whether the property is homestead is to be determined for all purposes by those tests. A city dweller may own an acre, a part of which is homestead and a part of which is not, or it may all be homestead, or he may own less than an acre and none of it be homestead, depending upon the facts of the case and the particular question being considered. If Ansel Hickok and the plaintiff so treated and used the particular property in question so as to impress it with the homestead character, then it is their homestead for the present purpose, and if they did not do so, then it is not their homestead, and this is true regardless of whether it was in the city or the country ...

Regardless of whether property is within or beyond the limitations as to quantity and value of homestead, it cannot be considered as homestead for the purpose herein being considered unless it is impressed with the quality and characteristics of homestead. There is no magic or obscurity in the meaning of the word; its popular significance and its statutory and constitutional import are the same; it simply means the residence of the family, the place where the home is (Preston v. Ottawa County Nat. Bank, 138 Okl. 133, 280 P. 581), and of course this definition does not restrict the home-

stead to the actual dwelling but it also includes those portions of the land upon which the dwelling is situated which are devoted to and used for purposes reasonably appurtenant to the urban dwelling, as a home place. The fact that one may own an acre of land within a city, or more, or less, does not of itself transform the entire tract or any part thereof into a homestead, unless the other attributes of a homestead are present ...

It being manifest that the acts and conduct of both Hickok and his wife, the plaintiff, multiplied over a period of five years, evidence more strongly the absence of homestead use and characteristics than the presence thereof, the judgment of the trial court in this respect was fully warranted, and is not against the clear weight of the evidence,"

*id.*, at pp. 1238—1239. In its summation, the Court noted "the fact that the extent of the homestead exemption may be an entirely different question from that of what the homestead is ..." *Id.*, at p. 1239—in other words, the maximum extent of the homestead right is one thing but the actual homestead exemptable under the circumstances may be something else.

In the matter now before this Court, it appears that Debtor's residence, occupied by Debtor and his wife, is located on land claimed exempt. There is no evidence of any impending change in those circumstances. Debtor's carport was once used for business purposes but is currently used "for family purposes;" the Court is not sure whose "family" is meant, but assumes that Debtor and his wife use the carport for their own domestic purposes; such use appears annexed to Debtor's residence in the house. Therefore, at least part of the 1.9 acres containing Debtor's house and carport must be impressed with the character of Debtor's homestead and must be exempt to him. However, much of Debtor's land is occupied and used by Debtor's children and their own families, said to be "emancipated" and so presumably not dependent on Debtor and his wife, living in their own (mobile) homes distributed about Debtor's land, maintaining their own households separate and apart from Debtor's and each other's. Although these people are part of Debtor's "family" in the social sense, in the economic and legal sense they appear to be more like tenants than dependents, and accordingly are not part of Debtor's "family" for purposes of determining Debtor's own homestead exemption. Land they live on cannot be used by Debtor primarily for his own domestic purposes in maintaining his separate household. Therefore, at least part of Debtor's 1.9 acres cannot be impressed with the character of Debtor's homestead and cannot be exempt to him.

Under the circumstances, the Court adopts the urban-homestead minimum exemption of one-quarter acre and maximum exemption of one acre as approximating the extent of Debtor's exempt home place in this rural-exemption matter.

Debtor shall select and designate a portion of the 1.9 acres as his exempt homestead, said designated portion to consist of not less than one-quarter acre nor more than one acre and to include Debtor's own house and Debtor's carport or sufficient space to accommodate the carport if it is to be moved out of the county roadway. Debtor shall make said selection and communicate it to the Trustee within fifteen (15) days after the date of entry of this order. All of the Debtor's interest in real property not so selected and designated is not exempt and remains property of Debtor's bankruptcy estate, held and managed by the Trustee.

/AND IT IS SO ORDERED.

EXHIBIT A