PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 12/31/96**

TENTH CIRCUIT

---

In re:  EDWIN D. KRETZINGER, also known as Edwin Kreitzinger, and RENA J. KRETZINGER,

Debtors,

_____

EDWIN D. KRETZINGER; RENA J. KRETZINGER,

Appellants,

v.

FIRST STATE BANK OF WAYNOKA, an Oklahoma Banking corporation,

Appellee.

No. 95-6185

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-94-298-B)

---

Submitted on the briefs:

Kenneth L. Spears of Kenneth L. Spears, P.C., Oklahoma City, Oklahoma, for Appellants.

Max M. Berry of Max M. Berry, P.C., Ponca City, Oklahoma, for Appellee.

Before BALDOCK and BRISCOE, Circuit Judges, and LUNGSTRUM,[*] District Judge.

BALDOCK, Circuit Judge.

Debtors Edwin D. and Rena J. Kretzinger appeal from a district court order affirming the decision of the bankruptcy court denying a homestead exemption for all but two of the eighty acres surrounding their rural home.[1] The dispositive question presented is whether, as a matter of Oklahoma law, an express declaration of rural homestead is vitiated by lease of the designated property for agricultural activities which, if conducted by the resident owners themselves, would be consistent with homestead status. We conclude that it is not and, accordingly, reverse with directions to grant debtors the exemption claimed as to all eighty acres.

**I**

[*]    Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation.

[1]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Because Oklahoma has opted out of the federal bankruptcy exemption scheme, see Okla. Stat. tit. 31, § 1(B); 11 U.S.C. § 522(b), the existence and extent of debtors' homestead is governed by state law. See In re Jones, 107 B.R. 350, 351 (Bankr. E.D. Okla. 1989). See generally David Dorsey Distrib., Inc. v. Sanders (In re Sanders), 39 F.3d 258, 260 (10th Cir. 1994). In Oklahoma, homesteads are categorized as either urban or rural. The pertinent exemption for the rural homestead is established by the following constitutional and statutory provisions:

> The homestead of any family in this State, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner . . . . [A]ny temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired.
>
> The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts [with certain specified exceptions]; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law . . . .

Okla. Const. art. XII, §§ 1, 2;

> [T]he following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided: . . . The home of such person, provided that such home is the principal residence of such person.
>
> The homestead of any family in this state . . . not within any city, town, or village, shall consist of not more than one hundred sixty acres (160) of land, which may be in one or more parcels, to be

-3-

selected by the owner. . . . [A]ny temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.

Okla. Stat. tit. 31, §§ 1, 2.

The Oklahoma Supreme Court set out the basic principles governing establishment of the rural homestead many years ago in Kerns v. Warden, 213 P. 70, 72 (Okla. 1923), stating that "in order to constitute any portion of [a] tract a homestead, two requisites must concur as to such portion: (1) The owner must intend the property as a part of his homestead; and (2) he must in some way use it as such." See In re Shields, 85 B.R. 582, 585 (Bankr. N.D. Okla. 1988)(for assessing homestead claims, "[t]he leading case is [still] Kerns v. Warden"). The Kerns court went on to clarify, however, that "[t]he word 'homestead' does not include merely the dwelling house, but it also embraces everything connected therewith which may be used and is used for the more perfect enjoyment of the home, such as outhouses for servants, for stock, or property, gardens, yard, and farming land to the extent of 160 acres." Kerns, 213 P. at 72 (quotation omitted). Further, the supreme court "has repeatedly held that [the homestead] provisions are to be liberally construed in the interest of the family home." First Nat'l Bank of Sentinel v. Anderson, 240 P.2d 1066, 1068 (Okla. 1952); see Burrows v. Burrows, 886 P.2d 984, 988 (Okla. 1994).

**II**

Debtors own a fee simple interest in an eighty-acre tract in rural Woods County, Oklahoma. They formally and publicly claimed the entire tract as their homestead by filing a declaration with the county assessor after debtor Edwin Kretzinger inherited the bulk of his interest therein in 1984. The land is fenced and has pastured livestock over the years, allegedly including several butcher calves for Mr. Kretzinger, who proposes to raise cattle after his impending retirement. In the meantime, however, debtors reside in a home on just two of the eighty acres (where Edwin has lived for nearly sixty years) and derive income from the rest of the tract through a property lease, recently renewed until April 2000 at $750 per year, and an oil and gas lease, which pays a $200 monthly royalty.

In the late 1980's, appellee First National Bank of Waynoka financed debtors' ill-fated purchase of a bar, on which it also held a mortgage from the seller. Although the bank had requested that the Woods County property serve as collateral, it went ahead with the loan despite debtors' refusal to pledge the property. When debtors' business failed, the bank foreclosed, bought the bar for $2,100 at foreclosure, and then obtained a judgment against debtors for an additional $20,000 deficiency. That deficiency judgment is debtors' primary debt, while the Woods County property, also valued at $20,000, is their largest asset in this proceeding.

When debtors listed the Woods County property as their rural homestead, the bank objected to any exemption regarding the seventy-eight acres under lease. The bankruptcy court sustained the objection, stating:

> Based on the evidence that has been presented, the Court feels that it has the obligation to find that the property in question, the 78 acres of the 80, was not part of the homestead, that the two acres resided on by the debtors is part of their homestead and is exempt. It's unfortunate that the debtors, by application of the law, will lose their ownership, or will eventually lose their ownership in the remaining 78 acres merely because they have leased it out for a small amount.

> But this is what the law dictates. And this is what the ruling of the Court must be. So, the Court finds that the 78 acres is [sic] not exempt, and two acres is [sic] exempt.

R. I doc. 1, attached "Transcript of Proceedings Had on the 2nd Day of November, 1993," at 23. The district court affirmed, likewise reasoning that debtors' lease of the property precluded the requisite finding that it was being used to support the family in its residence on the rural homestead. Id. doc. 10.

### III

"We review legal determinations by the bankruptcy court *de novo*, while we review its factual findings under the clearly erroneous standard." Osborn v. Durant Bank & Trust Co. (In re Osborn), 24 F.3d 1199, 1203 (10th Cir. 1994)(footnote and citation omitted). Oklahoma courts have characterized the existence/extent of the homestead as a factual question. See, e.g., Burrows, 886 P.2d at 987 n.9 (citing cases). "However, when a lower court's factual findings

are premised on improper legal standards or on proper ones improperly applied, they are not entitled to the protection of the clearly erroneous standard, but are subject to *de novo* review." Osborn, 24 F.3d at 1203; see also Williams v. Watkins, 219 P. 643, 644 (Okla. 1923)(when historical facts regarding homestead are undisputed, "the question involved is a question of law"). Further, the bankruptcy court's interpretation of the forum state's homestead law is reviewed *de novo* as well. Osborn, 24 F.3d at 1203 n.5 (citing Salve Regina College v. Russell, 499 U.S. 225 (1991)).

Our determination of the relevant Oklahoma law is governed by a decision of the state supreme court which is materially indistinguishable from this case. In Exchange National Bank v. Rose, 103 P.2d 496 (Okla. 1940), the defendant husband and wife sought to discharge, on homestead exemption grounds, a levy made on a tract of rural property associated (though, unlike here, not even continuous) with a nearby parcel on which they resided. The court noted that, like debtors in this case, the defendants had earlier

> filed in the office of the county clerk . . . . an instrument wherein they declared that they had selected both of the . . . tracts as their homestead; that the defendants had not cultivated either of said tracts themselves but had rented all of both of said tracts except a parcel of about 300x600 feet on which the dwelling, out buildings and gardens were located, for agricultural purposes under a written lease for a term of years which provided for cash rental and that the rental thus received had been used for the sustenance and benefit of the defendants . . . .

Id. at 497. The levying creditor argued, much as the bank does here, that the nonresidential parcel could not be claimed as part of the homestead because the defendants "had never resided upon or cultivated [that] tract themselves but had continuously rented said tract for cash." Id. The court flatly rejected this argument, stating:

> [B]oth the tract upon which the defendants in error resided and the tract upon which the levy had been made were used in the interest and for the benefit of the family of the defendants in error although both were cultivated by a tenant . . . . We know of no law which prevents the owner of a rural homestead from cultivating or operating the same through the medium of a tenant and accepting a cash rental in lieu of a portion of the products of the soil. Any other construction we are of the opinion would be narrow and contrary to both the letter and spirit of the Constitution and Statutes of the State.

Id. at 497-98; see also Clay v. Brown, 17 P.2d 378, 379, 381-82 (Okla. 1932)(finding rural homestead supported by "actual occupancy" despite fact that owner ran livestock operation on designated property "sometimes operating with a hired hand and sometimes having a tenant").

The bank does not directly come to grips with the implications of Rose, but attempts to defend the favorable judgment it obtained below with two collateral lines of argument. First, the bank contends that because debtors have not personally worked the leased property, they have failed to satisfy the owner's obligation to reside on or use the designated homestead property for family benefit. This argument obviously loses its force once it is recognized that, under

Rose, the rural homestead owner may reside on part of the designated property and beneficially, albeit indirectly, use the rest by obtaining rents from a tenant who, in turn, works the land in a manner appropriate to a rural homestead.[1]

The bank's second argument is superficially more compelling, as it involves case law which, in rejecting rural homestead exemptions for certain leased property, may at first blush appear to undercut Rose. There is, however, a significant, straightforward distinction between these two lines of authority that reconciles their divergent results and leaves Rose clearly applicable to the facts of this case.

In Powell v. Powell, 116 P.2d 889 (Okla. 1941), the court considered whether a tract of rural property qualified as part of a decedent's constitutional homestead at the time of his death, so that his surviving spouse could claim a derivative, probate homestead. The tract, physically separated from the property where the decedent had resided, had been leased by the decedent to tenant farmers to provide income for family expenses. Without mentioning Rose, decided the

---

[1]    Debtors' lessee pastures livestock on the leased property, and there is no suggestion that this retired professional with ranching, farming, and oil and gas interests has set up a family residence thereon. We specifically note these circumstances, as debtors' homestead could not "include some other and independent family's home and residence. Where houses and lots are rented . . . [to serve as] the homes and residences of [the] tenants and their families, the owner certainly cannot then claim that such houses and lots are a part of his own home and residence, although they may adjoin the same." Kerns, 213 P. at 72 (quotation omitted).

year before, the court denied the spouse's homestead claim because the property's use for rental income "did not distinguish it from any other farm land lying separate and apart from the home place of the ordinary land owner." Id. at 890. A similar treatment of leased rural property is reflected in the older case of Orwig v. Cloud, 233 P. 1085, 1086 (Okla. 1925), which involved a dispute between rival, successive grantees of certain property formerly leased out by their common grantor.

While a cursory recitation of the holdings in Powell and Orwig may suggest inconsistency with Rose, on closer reading it becomes clear why these two lines of authority coexist without any indication of mutual conflict. There is a crucial circumstance unique to Powell and Orwig bearing directly on the homestead-intent requirement that is analytically prior to the property-use question decided in Rose and at issue here.

"The gist of the requirement under the Constitution to impress a homestead is in the word 'selected.' The act of selecting is the constitutional condition. . . . The act of selecting . . . is attended, with the manifestations of intention, as spoken declarations, ownership, possession, occupancy, use in connection with the home, etc. . . . " Williams, 219 P. at 645. In Rose, as here, the leased tract had unequivocally been selected as homestead by the owners, who, moreover, had made their selection public by a formal, recorded declaration. Thus, the Rose

-10-

court's analysis regarding the effect of the lease began with the premise that the owners expressly intended the property to be their homestead, and asked whether that selection was vitiated by their lease of the property for family income. The question so framed was emphatically answered in the negative in the passage quoted above.

By contrast, in Powell and Orwig, no definitive homestead selection had ever been declared by the original owner. Consequently, the owner's uncertain intention with respect to this fundamental prerequisite *was the issue*. See Powell, 116 P.2d at 890 ("The question therefore is whether the deceased had selected the [property] as his homestead."); see also Orwig, 233 P. at 1086 (noting original owner's contradictory statements regarding past homestead intentions were "of doubtful value" to resolution of dispute between grantees). Thus, the distinct question these cases addressed was whether a prior owner's otherwise unestablished intention to select a parcel of property as homestead could be inferred from the act of leasing out the property for family income. The court's answer, that "that circumstance alone is not sufficient to indicate an intention on the part of the owner to select the [leased property] as part of the homestead," Powell, 116 P.2d at 890; see also Orwig, 233 P. at 1086, does not in any way undercut the analytically distinct holding in Rose or the application of that holding to this case.

In summary, under Rose, an owner's lease of rural property for agricultural purposes to provide family income is a use consistent with a declared homestead intention, while, under Powell and Orwig, such use alone does not, conversely, supply by implication a homestead intention not otherwise evident. As this case falls within the former principle, we are bound by Rose. See Central Nat'l Bank & Trust Co. v. Liming (In re Liming), 797 F.2d 895, 899 (10th Cir. 1986)("As a federal court construing Oklahoma [exemption] law, we must follow [state supreme court decision on point]"). Accordingly, we hold that, having definitively manifested the requisite homestead intention and used the designated property in a manner appropriate to homestead purposes, debtors are entitled to the exemption claimed for the entire eighty-acre tract surrounding their rural home.

The judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the cause is remanded for entry of judgment granting the full homestead exemption claimed by debtors under Okla. Stat. tit. 31, § 1(B) and 11 U.S.C. § 522(b)(2)(A).